[No. 1804, January 31, 1916.]

THAYER v. DENVER & RIO GRANDE R. R. CO.

[On Motion by Appellee to Require Clerk to Issue Mandate, February 11, 1916.]

SYLLABUS BY THE COURT.

1. An objection to the allowance of an amendment should be made when leave to amend is asked, and, in order to avail himself of error in granting the amendment, the party objecting should stand on the ruling, since he waives the objection by pleading to the amendment, by going to trial thereon, or by otherwise recognizing the amended pleading.

P. 343

2. A "wilful injury" is a positive act, while an "injury resulting from negligence" is a negative act, resulting from the absence of such care as it was the duty of the defendant to use.    P. 344

3. Negligence, whether slight, ordinary or gross, is still negligence, and is negative in its nature implying the omission of duty, and excludes the idea of willfulness. When willfulness is an element in the conduct of the party charged, the case ceases to be one of negligence.    P. 346

4. The doctrine of "last clear chance" has no connection or relation whatever to an intentional injury. In an action predicated upon the doctrine of "last clear chance" it must appear that plaintiff was negligent, but that such negligence was not the proximate cause of the accident, but that the proximate cause thereof was the negligence or want of due care on the part of the defendant.    P. 347

5. The plea of contributory negligence is a plea in confession and avoidance, which admits negligence on the part of the defendant, but seeks to avoid liability therefor by alleging that the plaintiff was guilty of negligence which contributed to his injury, and the plea is bad if it denies that defendant was negligent.    P. 348

6. Neither willful injury nor "last clear chance" can be properly pleaded in a reply, by way of confessing and avoiding an answer which sets up contributory negligence as a defense to a complaint based on simple negligence, and, where the reply sets up facts showing a right of recovery under either willful injury or "last clear chance," it is a departure from the complaint and subject to be stricken upon motion.    P. 349

7. A party must, under our system of pleading, recover upon the cause of action stated in his complaint, and he cannot recover upon a cause of action stated in his reply.    P. 354

8. A "departure" in the reply consists in leaving the case made in the complaint or petition in respect to some material matter which is inconsistent with, or which does not support it.                                     P. 356

9. One test laid down by the courts for determining the question as to whether a reply constitutes a "departure" from the complaint is determined by a negative answer to the inquiry whether evidence of the facts alleged in the reply is admissible under the allegations of the complaint.
P. 357

10. An instruction not based on the evidence is erroneous, and should not be given, and, where there is no evidence in a case tending to establish liability of the defendant under the doctrine of "last clear chance," it is error to submit such issue to the jury.                                     P. 359

11. The manner and method of operating a locomotive engine, the space within which, going at a given rate of speed, it can be brought to a stop, and the proper way to check the speed and bring to a stop a runaway car are not matters of common or general knowledge, and cannot be judicially known by the court.                                     P. 361

12. Where a cause of action is based upon alleged negligence of the master in failing to use due care in seeing to it that the brake upon a box car which the servant is instructed to run down the switch to a designated point, and there stop by applying the brake, is in proper repair, and the master has pleaded "assumption of risk," it is proper for the servant to prove his lack of experience in such work for the purpose of disproving such defense, as such evidence tends to show that he did not know and appreciate the danger.
P. 363

13. The physical ability or inability of a person to do work or perform any act may be proved by the direct testimony of the party himself.                                     P. 364

Thayer v. D. & R. G. R. R. Co., 21 N. M. 330.

14. Where, in a personal injury action, there is substantial evidence tending to show that the injuries are permanent, evidence of life expectancy is properly submitted to the jury.
P. 365.

15. It is a generally recognized rule that mortality tables, as published in standard encyclopedias, are admissible in evidence without further proof of their authenticity. Held, that the table of mortality based on American experience, found at page 885, vol. 20, Am. & Eng. Ency. of Law, was properly submitted to the jury without further or other proof.
P. 366.

16. Where an answer on its face shows that the injury received was in consequence of a risk not ordinarily incident to the employment which grew out of the master's negligence, the burden is upon the master to show that the servant knew and understood the increased danger.
P. 367

17. Under the common law the limit of the duty of the master to the servant in the matter of place of service, of machinery, and of appliances is to exercise ordinary care to furnish him with a reasonably safe place to work and reasonably safe appliances, and to use ordinary care to keep the place and appliances in a reasonably safe condition.
P. 368

18. Where the federal Safety Appliance Act of Congress (Act April 14, 1910, c. 160, § 2, 36 Stat. 298 [U. S. Comp. St. § 8618]) controls, the duty upon the part of a railroad company to equip its cars with and maintain efficient hand brakes thereon is absolute.
P. 369.

ON MOTION BY APPELLEE TO REQUIRE CLERK TO ISSUE MANDATE.

19. Rule 15 of this court (154 Pac. xxxviii), adopted July 15, 1915, construed. Held, that it is the duty of the clerk to issue a mandate, upon request of either party, where all the

costs have been paid by either party, and that he has no right to withhold such mandate where its issuance is requested by an appellee against whom judgment for costs has been entered in this court, until such appellee pays and satisfies such judgment.                                                  P. 370

Appeal from District Court, Santa Fé County; E. C. Abbott, Judge.

Action by Fred Thayer against the Denver & Rio Grande Railroad Company. From judgment for plaintiff, defendant appeals. Reversed and remanded, with directions, and issuance of mandate ordered.

RENEHAN & WRIGHT of Santa Fé and E. N. CLARKE of counsel, of Denver, Colorado, for appellant.

Duty of master is only to exercise reasonable diligence.
Wonder v. B. & O. R. Co., 32 Md. 411, 1 Am. R. 143; sec. 919, Labatt's Master & Ser. (2d ed.); Probst v. Delameter, 100 N. Y. 266; Krampe v. St. L. Brew. Co., 59 Mo. App. 277.

Complaint must show existence of some duty which defendant owed plaintiff and breach thereof.
2 Chitty Plead. (16th Am. ed.) 574; 29 Cyc. 566; Holt v. Spokane & P. Ry. Co., 3 Idaho, 783; World's Columbian Expo. Co. v. Republic of France, 91 Fed. 64.

Court erred in permitting amended complaint to be filed.
Sub-sec. 82, sec. 2685, C. L. 1897; 31 Cyc. 409; 1 Enc. P. & P. 528.

Loretto Literary Society v. Benevolent Soc., 126 Pac. 858; same case reported as Loretto Literary Society v. Garcia, 18 N. M. 318.
Candelaria v. Miera, 134 Pac. 859, 18 N. M. 318.

The last clear chance doctrine was first pleaded in the reply. A pleading is necessary to warrant submission of this theory to jury.

29 Cyc. 583; Ford v. Chicago, etc., R. Co., 106 Iowa, 85, 75 N. W. 650; Drown v. Northern Ohio Traction Co., 81 N. E. 326, 10 L. R. A. (N. S.) 421.

At common law contributory negligence was bar to recovery. The last clear chance doctrine is of recent origin but has been applied in this jurisdiction.

Price v. Pecos Valley, etc., Ry. Co., 15 N. M. 348, 110 Pac. 565; appeal dismissed by U. S. Supreme Court, 234 U. S. 767.

As to duty of employer with reference to servant of mature years, see:

26 Cyc. 1172; 26 Cyc. 1019; Arcade File Works v. Juteau, 40 N. E. 818; Stanley v. Chicago, etc., R. Co., 101 Mich. 202.

Court erred in permitting appellee to testify that he could not perform certain physical labor since accident which he could perform prior thereto.

Whipple v. Rich, 180 Mass. 477, 63 N. E. 5; Wimber v. Iowa Cent. R. Co., 114 Iowa, 551; Southern, etc., R. Co. v. McLendon, 63 Ala. 266.

Injury must be permanent in order to justify admission of evidence of life expectancy.

7 Enc. Ev. 426.

No sufficient foundation was laid for introduction of mortality table.

20 A. & E. Enc. L. 885; Notto v. Atlantic R. Co., 69 Atl. 968, 17 L. R. A. (N. S.) 1138.

As to master's liability with respect to agencies of his business, see:

Labatt's Mas. & Ser. (2d ed.) secs. 906, 919; 26 Cyc. 1121, 1123, 1136; Columbus, etc., R. Co. v. Troesch, 68 Ill. 545, 18 Am. R. 578; E. Tenn. R. Co. v. Stewart, 81 Tenn. 432; Ill. Cent. R. Co. v. Barslow, 55 Ill. App. 203; Chicago, etc., R. Co. v. Montgomery, 15 Ill. App. 205;

Sabine, etc., Ry. Co. v. Ewing, 1 Tex. Civil App. 531, 21 S. W. 700; Musick v. Jacob Dodd Packing Co., 58 Mo. App. 322.

Master is not insurer of servant's safety, but only required to exercise reasonable care, and its liability can only be predicated on negligence.

Wilson v. Railway, 7 Colo. 101; Railway v. McComas, 7 Colo. App. 121; Mining Co. v. Schaad, 15 Colo. 197; Mining Co. v. O'Hara, 45 Colo. 416; Kiner v. Mining Co., 184 Fed. 43; Patton v. Railway, 179 U. S. 658; Doherty v. R. R., etc., p. 99; S. A. L. v. Horton, 233 W. 492; Long v. Railway, 159 S. W. 779; Ellis v. Railway, 160 S. W. 512; Railway v. Kemp, 79 S. E. 558; Bowers v. Railway, 73 S. E. 677.

Burden of proof is on plaintiff to show master had notice of defect which caused injury.

Ocean S. S. Co. v. Matthews, 86 Ga. 418; Chicago, etc., R. Co. v. Montgomery, 15 Ill. App. 205; Ohio, etc., Ry. Co. v. Heaton, 137 Ind. 1; Williams v. St. Louis, etc., Ry. Co., 119 Mo. 316; Mahoney v. New York Cent., etc., R. Co., 64 Hun. 638, 19 N. Y. Supp. 511; Hudson v. Charleston, etc., R. Co., 104 N. C. 491.

Where facts are undisputed, it is a question of law whether there is negligence or contributory negligence.

Elkton M. & M. Co. v. Sullivan, 41 Colo. 241-252; Iowa G. M. Co. v. Diefenthalter, 32 Colo. 391, 396, 397; Labatt's Master & Servant, (2d ed.) secs. 1167-1168.

Where plaintiff's own testimony shows contributory negligence the court may direct a verdict.

Hayden v. Smithville Mfg. Co., 29 Conn. 548; Jones v. Mfg. & Invest. Co., 92 Me. 565, 69 Amer. St. Reps. 535, 43 Atl. 512.

The plaintiff assumed the risk.

Boyd v. Harris, 176 Pa. 484; A. T. & S. F. Ry. Co. v. Moore, 25 Kan. 632; Fletcher v. Freeman-Smith L. Co., 98 Ark. 202; Mayes v. Chicago, etc., R. Co., 63 Iowa, 562;

Gulf, etc.; R. Co. v. Williams, 72 Tex. 159; Brown v. Oregon Lumber Co., 24 Oreg. 315.

The last clear chance doctrine relates simply to the question of proximate cause.

Furst-Edwards & Co. v. St. L. S. W. R. Co., 146 S. W; 1024; Smith v. Railroad, 19 S. E. 863, 25 L. R. A. 287; Roanoke R. & E. Co. v. Carroll, 72 S. E. 125; Nehring v. Conn. Co., 86 Conn. 109.

The burden is upon the master to show that servant knew and understood extraordinary risks.

King v. Ford R. L. Co., 93 Mich. 172, 53 N. W. 10; Swoboda v. Ward, 40 Mich. 423;

But servant is presumed to know and appreciate ordinary risks.

8 Enc. Ev. 522; City of Denver v. Cappelli, 4 Colo. 25; Colo. & So. Ry. Co. v. McGeorge, 46 Colo. 15.

Court's instruction to effect that it is the duty in law, of defendant to furnish safe and suitable brakes is generally condemned.

C. & O. Ry. Co. v. Hallaway, 114 Fed. 458; C. B. & Q. Ry. Co. v. Mercker, 36 Ill. App. 195; P. D. & E. R. Co. v. Hardwick, 48 Ill. App. 562; Colo. Cent. R. R. Co. v. Ogden, 3 Colo. 499; Carelton M. & M. Co. v. Ryan, 29 Colo. 401. See also C., B. & Q. R. R. Co. v. Oyster, 58 Neb. 1; Hughley v. City of Wabasha, 69 Minn. 245, 248, 249; Bellville Pump & Skein Works v. Bender, 69 Ill. App. 189, 192; Gormully & Jeffery Mfg. Co. v. Olsen, 72 Ill. App. 33; C. & E. I. R. Co. v. Garner, 78 Ill. App. 291, 285; N. Y., T. & M. R. Co. v. Green, 90 Tex. 257, 266; Wells v. Coe, 9 Colo. 159, 160; Sampson M. & M. Co. v. Schaad, 15 Colo. 197, 199; Mocat v. Tenney, 17 Colo. 189; B. & C. R. R. Co. v. Liehe, 17 Colo. 280, 283; Oman v. Mannix, 17 Colo. 564, 576; U. P. R. Co. v. O'-Brien, 161 U. S. 451, 457; Deane v. Light & P. Co., 5 Colo. App. 521, 524; D. & R. G. R. R. Co. v. McComas.

Thayer v. D. & R. G. R. R. Co., 21 N. M. 330.

7 Colo. App. 121, 124; Maydole v. D. & R. G. R. R. Co.; 15 Colo. App. 449, 452; Floyd v. C. F. & I. Co., 18 Colo. App. 153, 156; McKean v. C. F. & I. Co., 18 Colo. 285, 289; Roche v. D. & R. G. R. R. Co., 19 Colo. 204, 208.

Effect of federal employer's liability act cannot be raised for first time in this court.
Cadwell v. Higginbotham, 151 Pac. (N. M.) 315.

CATRON & CATRON and EDWARD P. DAVIES of Santa Fé, for appellee.

The amendment was properly allowed.
Sec. 4162, Code 1915.

No objection or exception having been taken to allowance of amendment complaint, question cannot be raised here.
Territory v. Gonzales, 14 N. M. 30; State v. Faker, 131 Pac. 489.

Appellant cannot "mend his hold" after verdict.
Savings Bank v. Woodruff, 14 N. M. 502; Ry. Co. v. McCarthy, 96 U. S. 258-267; Bullard v. Lopez, 37 Pac. 1103; Johnson v. Cummings, 55 Pac. 269.

Defective complaint is cured by subsequent pleading containing defective allegations and placing same in issue.
Bullard v. Lopez, 7 N. M. 567; Johnson v. Cummings, 55 Pac. 269; Cowell v. South Denver Real Estate Co., 63 Pac. 991; Ford v. Harris, 43 S. W. 199; Samuels v. Simmons, 44 S. W. 395; Prior v. Warford, 54 S. W. 838; Deeves v. Metropolitan Realty Co., etc., 41 N. Y. S. 647; Cleveland C. C. & S. L. Ry. Co. v. Tehan, 26 O. Cir. Ct. Rep. 457; Rattelmiller v. Stone, 68 Pac. 168; Born v. Dowell, 50 Pac. 695; Hanson v. Wagner, 65 Pac. 142; Colo. Fuel & Iron Co. v. Chappell, 55 Pac. 606; Howland Coal & Iron Works v. Brown, 76 Ky. 681.

The amendment was properly allowed; the last clear chance doctrine may be properly pleaded in reply.

Keefe v. Chicago, etc., Ry. Co., 92 Iowa, 182-185; Denver Co. v. Dwyer, 3 Colo. App. 408; Denver Co. v. Dwyer, 20 Colo. 132; Posten v. Denver Co., 11 Colo. App. 187; Griffith· v. Denver Co., 14 Colo. App. 504; Allen v. Florence Ry. Co., 15 Colo. App. 213; Denver Ry. Co. v. Buffher Co., 30 Colo. 27-37; Nichols v. Chicago R. Co., 44 Colo. 501; Denver Co. v. Wright, 47 Colo. 366; Baltimore & Ohio Ry. Co. v. Helenthal, 88 Fed. 116; Hawley v. Col. Ry. Co., 25 A. App. D. C. 1; Mates v. Union Ry. Co. of N. Y. City, 67 N. Y. Supp 258; Gilbert v. Erie Ry. Co., 97 Fed. 747.

Witness could state conclusion as to his inability to perform certain kinds of work after sustaining injury, though it is opinion evidence.

Miera v. Territory, 13 N. M. 192; 17 Cyc. 29, 60.

The mortality table was properly admitted.

Sellars v. Foster, 27 Neb. 122, 123; Scagel v. Chicago Ry., etc., 49 N. W. 990; Scheffler v. Minneapolis R. Co., 32 Minn. 518, 8 A. & E. Ency. Law, 947-948.

Extraordinary risks, growing out of negligence of the master, are not assumed.

Van Kirk v. Butler, 145 Pac. (N. M.) 1032; 4 Labatt's Mas. & Ser., sec. 1362.

Courts will take judicial notice of standard mortality tables showing natural expectancy of human life at given ages.

17 A. & E., section 9, page 900; Louisville, etc., R. Co. v. Morthershed, 97 Ala. 261.

Injury need not be permanent.

7 Enc. Ev. 426; M. K. & T. Ry. Co. v. Simmons, 33 S. W. 1096; Blair v. Madison Co., 81 Iowa. 313; Ronn v. City of Des Moines, 42 N. W. 582; Whelan v. New York, etc., 38 Fed. 15.

·The master was negligent in sending servant to ride car down track, without having repaired defective brake, or at least in furnishing servant with means to handle brake.

Thayer v. D. & R. G. R. R. Co., 21 N. M. 330.

4 Labatt's Mas. & Ser., sec. 1601; N. P. R. Co. v. Charles, 51 Fed. 562.

Where question of contributory negligence is subject to doubt, or where inference to be drawn from evidence concerning same is such that fair-minded men may draw different conclusions therefrom, it is for the jury.

3 Lab. Mas. & Ser., sec. 1244.

Master knew or should have known servant was in dangerous position, hence negligence on its part.

Price v. Pecos V. Ry. Co., 15 N. M. 348; Thompson v. Albuquerque T. Co., 15 N. M. 407.

Where there is any substantial evidence to support judgment same will not be disturbed on appeal.

Territory v. Sais, 103 Pac. (N. M.) 980; Corocran v. Albuquerque T. Co., 103 Pac. (N. M.) 645.

### STATEMENT OF FACTS.

In September, 1912, the appellee, with others, was employed by the appellant company at Santa Fé, N. M., to work at Delta, Colo., icing refrigerator cars. On the evening of the 6th of September, 1912, the ice house was opened, and certain cars which had been standing up above the ice house switch were placed in position for icing. The first car iced was a fruit grower's express car, No. 22445. One Jenkins was the foreman in charge of the night gang. The appellee commenced working about 7 o'clock that evening, and was working inside the first car, attending to the placing of the ice in the proper receptacles. After the first car was iced, the foreman, Jenkins, called one of the men, Santiago Quintana, and told him to take a torch and go down the ice house switch (which has a grade of about one-half of 1 per cent.) and stand about 20 yards back from the switch for the purpose of signaling the place for the car to be stopped. After Quintana had started down the switch, the foreman told the plaintiff to go up on top of the car and ride it

down the switch track, stopping it at the point where he saw the light. The plaintiff asked no instructions from the foreman, nor did the foreman give him any instructions other than those stated; that is, to go up on top of the car and ride it down to the switch, stopping it at the point where he saw the light. The appellee got on top of the car, "kicked out the clipper," and found that the brake was loose, and turned the wheel back and forth; appellee's testimony being to the effect that the brake was not set when he got on the car. Some of the men removed a wooden block from in front of the car, and with pinch bars started the car downgrade, The distance from the switch stand to the point where the first car was iced was 1,100 feet. After appellee mounted the car as testified to by him, he made no effort to set the brake until he rode to within a distance of about 25 yards from where Quintana was standing with the light. Then he tried to put on the brake to stop at that point, but could not stop the car, as the brake would not catch. After he passed Quintana, he called to Quintana to get up and help him. Just at this moment he looked back and saw an engine approaching the car. He saw his safety could only be secured by holding onto the brake, which he did until the engine and car collided. From the effects of the shock he was thrown off on the left-hand side of the track, and sustained a broken leg, his face was cut and bruised, his teeth knocked loose, his jaw on one side affected, and his hearing injured. He was picked up by either the engineer or the brakeman, placed on the rear of the engine, and carried to the depot, from 1,200 to 1,500 feet down the track. After remaining there a while, he was taken to a hotel, and the next day taken to the railroad hospital at Salida, Colo., where he remained about ten days, and was then discharged, returning to his home in Santa Fé. He testified at the time of the trial that his leg had not recovered; that he still suffered pain at the point of the break; that his hearing was gradually growing worse; and that he was not able to chew on the side of his jaw that was injured.

And the appellee further testified that at the moment
he first saw the engine the rear of the engine was advanc-
ing toward the car on which he was riding. The collision
occurred just east of the switch stand upon the main line.
The car upon which appellee was riding had come down
off the ice house switch, running through the switch point
onto the main line.

There is a conflict in the testimony of the engineer and
brakeman and appellee as to the direction in which the
engine was headed. Appellee testified that the engine
was headed east, so that the rear of the engine tank col-
lided with the car upon which he was riding. The engi-
neer and brakeman testified that just prior to the acci-
dent they had come in from the east, and that their en-
gine was headed west toward the ice house, and that just
prior to the accident they had been setting out the train
which they had just run in from the east. The engineer
further testified that just prior to the accident he had set
out a portion of the train upon another switch, and had
pulled out of the switch up to the main line and beyond
the switch stand on the ice house switch, and had re-
versed his engine, and was backing down the main line to
couple onto his caboose, which he had left standing in
front of the depot. He was sitting in the cab on the right-
hand side of the engine, which would be next to the ice
house switch. Just after he had reversed and started
back he saw the car coming down the ice house switch in
the same direction in which he was going, and at the same
moment he heard a man "yell," but saw no one. He in-
stantly realized that he would not have time to again re-
verse his engine and pull out of the way of the car be-
cause before he could stop his engine the car would have
"side swiped," and probably have killed him. He instant-
ly opened up the throttle and backed down the track
ahead of the car, passing the switch stand point just in
time to avoid being hit by the car. After getting in ahead
of the refrigerator car, he slowed down and let the re-
frigerator car catch up with him and stopped both the
car and his engine. The shock of the collision was suffi-

cient to knock appellee off the top of the car when the car collided with the engine. The engine had an ordinary headlight, but did not throw any light upon the top of the approaching car so that the engineer could see any one upon the car. When he first saw the car the front end of the same was practically opposite where he was sitting in the cab.

Upon the trial, a witness, Abel Benavides, testified that prior to the icing of the car he went up above the ice house and rode the car down and spotted it in front of the ice house, using the brake, and that when the car was spotted he set the brake. On the other hand, appellee testified that the brake was not set when he mounted the car and attempted to release it. After the accident this car was pushed up on the switch and blocked by the brakeman. Within less than an hour thereafter the car was picked up by an outgoing train and carried to Grand Junction, some 50 miles distant. This particular car reached Grand Junction within less than four hours after the accident, and was there inspected, but the testimony of the inspector shows that he did not try the hand brakes at all, that his inspection lasted about one and a half minutes to the car, but he testified that his inspection showed that the brake rigging on this car was in good shape.

The evidence shows that appellee remained on crutches until December 2, 1912, and that since that date he has worked at various jobs. Upon the trial of the case, over the objection of the defendant, the court submitted to the jury both the issue of primary negligence and the "last-clear chance" rule. The jury returned a verdict in favor of appellee for $5,000. Motion for a new trial having been overruled, judgment was entered accordingly, from which judgment defendant prayed this appeal.

## OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above)— [1] The first question discussed by counsel for appellant is the action of the trial court in permitting appellee to file an amended complaint. The amended complaint was filed by leave of court, over appellant's objection, at

the conclusion of appellant's case in chief upon the first trial of this case. This appeal is from a judgment rendered upon a retrial of the cause, and appellant concedes that the amendment stands in the same light as though made prior to the trial. We are favored by a very able and thorough discussion of the question as to whether the original complaint stated a cause of action, it being appellant's contention that it did not, and, failing so to do, the court had no power to permit an amended complaint to be filed which did state a cause of action. This question, although very interesting and one upon which much disagreement is to be found in the adjudicated cases, is not before us for consideration, because of the fact that appellant elected not to stand upon his objections to the filing of the proposed amended complaint, but answered the same, and proceeded to trial thereupon. This being so, it waived the alleged error by pleading to the amendment.

In 31 Cyc. 751, it is stated:

"An objection to the allowance of an amendment should be made when leave to amend is asked, and in order to avail himself of error in granting the amendment the party objecting should stand on the ruling, since he waives the objection by pleading to the amendment, by going to trial thereon, or by otherwise recognizing the amended pleading."

The text is sustained by numerous cases. See, also, to the same effect, 1 Ency. Pl. & Pr. 573; McAdow v. Kansas City Western Ry. Co. (Mo. App.) 164 S. W. 188; Rice v. Norfolk-Southern R. Co., 167 N. C. 1, 82 S. E. 1034; American Home Circle v. Schneider, 134 Ill. App. 600; Kansas City Southern Ry. Co. v. Tonn., 102 Ark. 20, 143 S. W. 577.

[2] In the amended complaint, upon which the case was tried, appellee alleged facts showing that the brake apparatus with which the car was equipped, which car he was instructed to ride down the switch track and stop at the designated point, was defective, that by reason of such defects so alleged to exist he was unable to stop the car, and that it ran down upon the main track, where it collided with an engine. It will be noted that the defec-

tive brake was alleged to have been the proximate and sole cause of the accident by which the plaintiff was injured. To this complaint appellant filed an answer in three counts. The first count was a general denial. The second count was as follows:

"Defendant denies that the injuries alleged to have been received by plaintiff, if any injuries were by him received, were due to or owing to or caused by any negligence or want of care or caution on the part of the defendant, but, on the contrary, defendant alleges that such alleged, or any, injuries were due to or caused by the negligence, want of care, and caution on the part of the plaintiff himself."

The third count pleaded assumption of risk.

To this answer appellee filed a reply in which he first denied generally all the allegations of new matter pleaded in the answer, and then, by way of an alternative further reply, he set up the following facts:

"(a) That, were all the matters and facts of new matter pleaded in defendant's answer true. still the defendant, through its employes and agents, knew and realized the dangerous position of the plaintiff, and, knowing and realizing such dangerous position of the plaintiff, failed to use due care to avoid the collision which resulted in the accident and injury to the plaintiff.

"(b) That it was the duty of the defendant and its agents and servants and employes to know the dangerous position of the plaintiff, and, knowing the same, to have avoided it.

"(c) That the defendant, through its agents and employes, knowing of the danger of the plaintiff, not only did not avoid the collision, but deliberately caused the same."

Appellant objected to the filing of the reply upon two grounds: First, that it was not filed in apt time; and, second, that it was a departure from the complaint. The objections were by the trial court overruled, and the reply was filed.

It will be noted that the reply attempts to set up in the same count both "last clear chance," or "supervening negligence" and willful injury. This evidently was occasioned by reason of the pleader's failure to appreciate the distinction which exists between a willful injury and an injury due solely to inadvertence, or, in other words, an injury occasioned by the negligence of a party owing to

another exercise of due care and caution. A willful injury is a positive act, while an injury resulting from negligence is a negative act, resulting from the absence of such care as it was the duty of the defendant to use. An examination of the cases dealing with the subject of negligence will disclose the fact that much confusion exists in regard to the question of the varying degrees, so termed, of negligence.

[3] Many of the courts classify negligence into three degrees, viz., slight, ordinary, and gross, and in many instances use the terms "gross negligence" and "willful tort" interchangeably and as synonymous terms. In many states the Legislature has, by statute, adopted the three degrees, and has defined each degree. In the absense of statute, however, there is no warrant for any such classification. Actionable negligence has no degrees, the true rule was announced by the Supreme Court of Indiana in the case of Terre Haute & I. R. Co. v. Graham, 95 Ind. 293, 48 Am. Rep. 719, where the court said:

"Negligence, whether slight, ordinary, or gross, is still negligence. * * * Negligence is negative in its nature, implying the omission of duty, and excludes the idea of willfulness. * * * When willfulness is an element in the conduct of the party charged, the case ceases to be one of negligence."

See, also, to the same effect, Parker v. Pennsylvania Co., 134 Ind. 673, 34 N. E. 504, 23 L. R. A. 552; Louisville, N. A. & C. R. Co. v. Bryan, 107 Ind. 51, 7 N. E. 807; Milwaukee & St. Paul Ry. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; Chicago, R. L. & P. Ry. Co. v. Hamler, 215 Ill. 525, 74 N. E. 705, 1 L. R. A. (N. S.) 674, 106 Am. St. Rep. 187, 3 Ann. Cas. 42. In the case last cited the question is ably discussed, with copious quotations from the adjudicated cases and text-writers. The court quotes with approval the following from the American & English Encyclopedia of Law, vol. 21, p. 459:

-"While not infrequent references are still found in judicial discussions of the subject to the classification of negligence into degrees, the tendency of modern authority and the weight of the best-considered cases are now opposed to this view, holding that in every case negligence, however de-

scribed, is merely a failure to bestow the care and skill which the situation demands, and hence it is more accurate to call it simply negligence. Some decisions even go further, and declare that the classification of negligence into degrees is a matter of pure speculation and of no practical consequence, that it is useless and tends to confusion, and that, in fact, it is unsafe to base any legal decision on distinctions in the degree of negligence."

The distinction between negligence and willful tort was pointed out by this court in the case of Wood v. Sloan, 148 Pac. 507, L. R. A. 1915E, 766.

[4] The doctrine of "last clear chance" has no connection or relation whatever to an intentional injury. If an injury is intentionally and purposely inflicted, the question of negligence does not enter into the inquiry or have any bearing whatever upon the injured party's right to recover damages. Contributory negligence on the part of the injured party likewise is relegated from the case; for in such cases it matters not how negligent or careless the injured party may have been, if the defendant willfully and intentionally inflicts injury upon him, he is liable and should respond in damages. On the other hand, where liability is predicated upon an injury inflicted upon one guilty of negligence by which he is placed in a perilous position, yet his perilous position is discovered by another, or by the exercise of due diligence the peril of the other should have been discovered, such party is bound to use reasonable care to avoid the injury. Where an action is predicated upon an omission of duty, in such a case it properly belongs to and is classified in the field of negligence. To such an action contributory negligence on the part of the plaintiff, which continues concurrently with the negligence of the defendant and contributes proximately to the injury, is a valid defense. In other words, in an action predicated upon the doctrine of "last clear chance," it must appear that plaintiff was negligent, but that such negligence was not the proximate cause of the accident, but that the proximate cause thereof was the negligence or want of due care on the part of the defendant.

· In the present case the parties have treated the reply as proceeding only upon the theory of "last clear chance," and, such being the case, this court will proceed upon the same assumption.

[**5**]   This brings us to the inquiry as to whether the reply was a departure from the complaint.   Appellee argues that the appellant, in his second defense, quoted ·supra, set up contributory negligence on the part of plaintiff, as a defense to his complaint, and .that his reply amounted to nothing. more than a confession ·and avoidance of ·that defense.   In this he is in error:   First, because the answer did not set up contributory negligence; ·and, second, "last clear chance" is not a defense to contributory negligence.

As to the first question it will be observed that the defendant denies that he was guilty of any negligence or ·want of care, and alleges that the injury was "due to or ·caused by the negligence, want of care and caution on the part of the plaintiff himself."   This amounted to no more than a general denial of the plaintiff's complaint, and .did not require a reply.

In 29 Cyc. 583, it is said:

"An answer amounting to no more than a denial of defendant's negligence and that it was wholly caused by the negligence of the plaintiff does not require. a reply."

In volume 5, Am. & Eng. Ency. Pl. & Pr., p. 11, the rule is stated as follows:

"The plea of contributory negligence is a plea in confession ·and avoidance, which admits negligence on the part of the defendant, but seeks to avoid liability therefor by alleging that the plaintiff was guilty of negligence which contributed to his injury, and the plea is bad if it denies that defendant ·was negligent."

In the case of Watkinds v. Southern Pacific Co. (D. C.) 38 Fed. 711, 4 L. R. A. 239, the court, in considering a similar answer, said:

· "This defense confesses nothing, but avers that the defendant was not guilty of negligence, and that the injury sustain- ·ed by the plaintiff was wholly owing to his own negligence.

As I have said, it amounts to nothing more or less than another denial of the allegation in the complaint that the injury in question was not caused by the fault or negligence of the plaintiff [defendant]."

In the case of Birsch v. Citizens' Electric Co., 36 Mont. 574, 93 Pac. 940, the answer was in almost the same identical language as in the one now under consideration. The court said:

"It goes without saying, then, that an answer which denies any negligence on the part of the defendant, and alleges that the injury resulted wholly from plaintiff's negligence, does not plead contributory negligence; and the defendant, having failed to plead contributory negligence, cannot rely upon it, unless," etc.

In the case of Wastl v. M. U. Ry. Co., 24 Mont. 159, 61 Pac. 9, the court said:

"Obviously, therefore, the negligent acts of plaintiff and defendant must concur and operate together, each contributing proximately to cause the injury complained of. If this condition does not exist, then there is no question of contributory negligence."

In the case of Payne v. C. & A. Ry. Co., 129 Mo. 405, 31 S. W. 885, the court, after quoting Mr. Beach's definition of "contributory negligence," said:

"If the negligence of either plaintiff or defendants is the sole cause of the injury, there could be no contributory negligence in the case."

In further support of our position see the following cases: Cogdell v. Wilmington & Weldon Ry. Co., 132 N. C. 852, 44 S. E. 618; Benjamin v. Railroad, 245 Mo. 598, 151 S. W. 91; Cain v. Winterstein, 144 Mo. App. 1, 128 S. W. 274; Ramp v. Met. Street Ry. Co., 133 Mo. App. 700, 114 S. W. 59; Felton v. Aubrey, 74 Fed. 350, 20 C. C. A. 436; H. & T. C. R. R. Co. v. Patterson, 20 Tex. Civ. App. 255, 48 S. W. 747; Scattergood v. Ingrain, 86 Ohio St. 76, 98 N. E. 923.

[6] But, as both parties evidently treated this count of the answer as setting up the defense of contributory negligence, we will so assume, and proceed to a consider-

ation of the second point. Appellee, in his brief, quotes from the text of 29 Cyc. 583, and by inserting the bracketed words shown below assumes that "willful negligence" and "last clear chance" are synonymous terms. The text quoted is as follows:

"Willful negligence of defendant [last clear chance] which, notwithstanding the negligence of plaintiff's intestate [contributory negligence] resulted in injury, must be pleaded by the reply, to be available to overcome a defense of contributory negligence, and is not inferentially pleaded by a general denial of contributory negligence without such affirmative allegations."

The text quoted is supported only by one case, if that case can be said to so decide, viz., Ford v. Chicago Ry. Co., 106 Iowa, 85, 75 N. W. 650. In that case the reply to the defense of contributory negligence was a general denial, and the trial court instructed on the theory of "last clear chance." The only question before the court was as to whether, under the pleadings, this instruction was proper, and the court correctly held that it was not, as no such issue was made by the pleadings. The court was not called upon to decide whether this should have been pleaded in the complaint or the reply, and what was said upon this point may be considered as obiter. Just what is intended by the term "willful negligence," employed in the text quoted, is not clear, but whether it was intended to mean willful and intentional injury, or, as appellee assumes, "last clear chance," is wholly immaterial, as a brief consideration will show.

On the assumption that it means a willful tort purposely and intentionaly inflicted, it must be remembered that a cause of action based upon negligence and one predicated upon a willful tort are quite different and distinct. In the former the element of intentional wrong does not enter, but it proceeds upon the theory that the injury was occasioned by reason of some inadvertence on the part of the defendant in a situation where due care and diligence were owing to the plaintiff. In such an action the proximate cause of the injury must necessarily be the inadvertence of the defendant; otherwise there could be no

recovery. To an action of this character a defendant may plead contributory negligence on the part of plaintiff which, concurring and co-operating with defendant's negligence, proximately contributed to the injury, and, if such fact be proved, it will defeat a recovery. In such a case, looking only to the ground upon which the plaintiff bottoms his right to recover, it must be apparent that the inquiry would be limited to the question as to whether the agency which the plaintiff alleges was responsible for his injury was solely responsible therefor, or did some act or omission on the part of the plaintiff which, under the circumstances, he should have refrained from doing, or should have done, enter into and directly and conjointly with defendant's act or omission produce or cause the resulting injury. If some other act of omission or commission on the part of the defendant caused the injury, how can it be logically said that such other act, if pleaded and proved, would avoid the concurring negligence of the plaintiff, and permit him to recover upon the complaint? If the facts set forth in his complaint are met and counterbalanced by the proof of contributory negligence, that must be an end to that act of negligence on the part of the defendant. If some subsequent negligent or willful act on the part of the defendant intervenes, and is the active, moving, and proximate cause of the injury, without which the same would not have occurred, it must be true that the right of recovery would rest solely upon such last negligent act or willful tort without further relation to the original negligence of either party, save as such prior negligence might be shown as a fact in the case, for the purpose of explaining how the plaintiff came to be in the situation he was at the time of the injury, where his right of recovery is based upon the theory of "last clear chance" or "willful tort."

In an action based upon an intentional and willful injury, as stated, it matters not how careless and negligent the plaintiff may have been, as such carelessness and negligence on his part would not justify the defendant in inflicting upon him an intentional injury. In such a case

the wrong complained of is the **injury purposely inflicted,** to which the prior negligence of either party has no relation, except perhaps to explain the plaintiff's presence at the place of the infliction of the injury. In such a case the party would not base his right to recover upon any negligence or want of care on the part of defendant which might have been the remote cause of the injury, but upon the willful wrong of the defendant which was the proximate cause thereof.

If it be taken for granted that the Iowa court held that "willful injury" could be pleaded in a reply, in confession and avoidance of an answer alleging contributory negligence, direct authority to the contrary is afforded by the Supreme Court of Alabama. In the case of Louisville & Nashville Railroad Company v. Markee, Adm'r, 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21, the court said:

"It would also seem on principle that, if there is that variance between simple negligence and wanton or willful injury that proof of the fromer will not sustain a complaint charging the latter, a replication to a plea of contributory negligence averring willful and intentional injury would be a departure from a complaint charging simple negligence."

In the case of Alabama Great Southern Railroad Co. v. Hall, Adm'r, 105 Ala. 599, 17 South. 176, the complaint counted on simple negligence; the defendant pleaded contributory negligence. To this plea the plaintiff replied that the engineer was guilty of "gross, wanton, and reckless negligence in running the engine at too great a rate of speed." The court said:

"If by the replication it was intended to aver no other than simple negligence, as charged in the complaint, the replication did not answer the plea. On the other hand, if the replication averred wanton or willful wrong, the replication was a departure from the original cause of action, and upon objection should have been rejected."

See, also, George v. Mobile & Ohio R. R. Co., 109 Ala. 245, 19 South. 784.

On the other hand, if we assume that the reply attempts only to set up the doctrine of "last clear chance," appel-

lee's position is not improved. It is not true, as argued by appellee, that "last clear chance" is a defense to contributory negligence, and can only be properly pleaded in a reply to an answer setting up contributory negligence as a defense. Contributory negligence, as stated, is as valid and complete a defense to an action founded upon that doctrine as it is in any other branch of the law on negligence, where such contributory negligence of the plaintiff continued concurrently with the negligence or want of care on the part of the defendant, and, together with the negligence of the defendant, contributed to the proximate cause of the injury, and without which the accident would not have resulted. Where the negligence of the plaintiff continues up to the very moment of the injury and is contemporaneous and concurrent with the negligence of the defendant, and where the exercise of reasonable diligence before the injury would have warned the plaintiff of his danger and have enabled him to escape by his own efforts, there can be no recovery. Take, for example, the facts in the present case. Suppose the defendant could show that after the car upon which plaintiff was riding was upon the main track plaintiff saw the engine approaching, and he could by the exercise of due care, have stepped off the car without danger of injury to himself, and he neglected to do so, he would have no right to recover. Of course, if the plaintiff could show that he was unconscious of the threatened danger in time to have avoided the injury, and that the defendant actually saw or knew of the danger to which the plaintiff was exposed, and also knew or should have known that the plaintiff was unconscious thereof, and the defendant failed to use due diligence to avoid the injury, the plaintiff would be entitled to recover. Union Traction Co. v. Bowen, 57 Ind. App. 661, 103 N. E. 1096.

Appellee mistakenly assumes that his right to recover is based upon the primary negligence of the defendant in putting him to work upon a car equipped with a defective brake; whereas, if the matters set up in the answer are true, and likewise the allegations of the reply are also

true, then his cause of action must necessarily be predicated upon the negligence of the engineer in failing to use due care to avoid running his engine into the car upon which appellee was riding. In such case the negligence of the engineer was the sole, proximate cause of the accident, and the antecedent negligence of the defendant and the plaintiff was the remote cause of the remote events which co-operated to bring the plaintiff into the perilous position where he was injured by reason of the intervening negligence of the defendant. This is clearly evidenced by the cases collected in the case note to Dyerson v. U. P. R. R. Co., 7 L. R. A. (N. S.) 132. See, also, subdivision VIII, note to case of C., C., C. & St. L. Ry. Co. v. Means, 5 Neg. Com. Cases, Ann. 101, and note to case of Bogan v. C. C. R. R. Co., 55 L. R. A. 418.

[7] Therefore, if plaintiff recovers in this case, his right to so do, assuming that the allegations of his reply are true, and that he was guilty of contributory negligence in the first instance, as alleged in the answer, must rest upon proof of the facts alleged in his reply; in other words, he must recover upon his reply, and not upon his complaint. It is elementary that a party cannot sue for the breach of one duty and recover for the breach of another. See opinion by Judge Cooley in the case of F. & P. M. Ry. Co. v. Stark, 38 Mich. 714.

In this case if the plaintiff is to recover upon the doctrine of "last clear chance," it is apparent that he would be recovering upon his reply, and not upon his original complaint. This he cannot do. Of course, a party may plead any matter by way of reply which avoids the answer, but in such a case the party does not predicate his right to a recovery upon his reply, but simply obviates the effect of the answer interposed to his complaint, and leaves his right of recovery upon the original complaint unaffected by the answer. The reply to an answer setting up contributory negligence, as in this case, to the primary negligence of the defendant, which bases a right of recovery upon the doctrine of "last clear chance," does not avoid the effect of the answer in so far as such primary

negligence is concerned, but sets up an independent right of recovery, which relegates both the primary negligence of the defendant and the contributory negligence of the plaintiff to the background. In other words, the prior negligence of both parties is eliminated as a direct proximate cause of the injury, and the right to recover rests solely upon an altogether new and distinct act of negligence on the part of the defendant, upon which plaintiff must recover, if a recovery is to be had.

That a plaintiff is not entitled to affirmative relief upon a reply is well settled by the adjudicated cases. In the case of Small v. Kennedy, 137 Ind. 299, 33 N. E. 674, 19 L. R. A. 337, the court said:

"We have not been cited to any authority, nor do we know of any, holding that affirmative relief may be granted upon a reply. The rule is, as we understand it, that a set-off or counter-claim may be utilized, by way of reply, to defeat any affirmative matter set up by way of answer, but such set-off or counter-claim cannot, by way of reply, be made the subject of a substantive claim upon which a judgment may be based."

In the case of Moss v. Fitch, 212 Mo. 484, 111 S. W. 475, 126 Am. St. Rep. 568, the Supreme Court of Missouri quoted with approval the following excerpt from the case of Crawford v. Spencer, 36 Mo. App. 78:

"A party must, under our system of pleading, recover upon the cause of action stated in his petition, and he cannot recover upon a cause of action stated in his reply. The provision of the statute above quoted was not, we think, intended to change the office of a reply, which is that of a denial or a confession and avoidance of matter set up in the answer."

And also the following from the case of Stepp v. Livingston, 72 Mo. App. 179:

"If it were disclosed by the record that the plaintiff recovered on a cause of action stated in his reply, but not in his petition, it would be our duty to reverse the judgment."

In the same case the court quoted, with approval, the following excerpt from 18 Ency. Pl. & Pr. 690:

"The plaintiff cannot introduce in his reply a cause of action different from that which he states in his complaint or

petition; in other words, he cannot after answer is made abandon the cause of action set up in the complaint and make an entirely new cause of action in the reply."

In the case of Hastings School District v. Caldwell, Hamilton & Co., 16 Neb. 68, 19 N. W. 634, the court quoted with approval the following excerpt from Maxwell's Code Pleading & Practice, 108:

"A plaintiff can recover only on the causes of action stated in his petition. It is not the province of a reply to introduce new causes of action. This can be done only by amendment of the petition."

To the same effect see, also, the following: Plummer, Perry & Co. v. Rohman, 61 Neb. 61, 84 N. W. 600; Jones v. Marshall, 56 Iowa, 739, 10 N. W. 264; Marder, Luse & Co. v. Wright, 70 Iowa, 42, 29 N. W. 799; Eskridge v. Ditmars & Co., 51 Ala. 245.

[8]    In Bliss on Code Pleading (3d ed.) § 396, the author says:

"A departure in the reply [as at common law] will not be allowed. It consists in leaving the case as made in the complaint or petition in respect to some material matter, in introducing new matter which is inconsistent with, or which does not support it. It will not be permitted in any system which pays the least regard to the logic of pleading. If the plaintiff desires to change his position, he must do so upon leave by amending his original pleading."

Plaintiff is not aided by section 4119, Code 1915, which reads as follows:

"When the answer contains new matter, the plaintiff may, within 20 days, reply to such new matter, denying generally or specifically each allegation controverted by him, or any knowledge or information thereof sufficient to form a belief; and he may allege, in ordinary and concise language, without repetition, any new matter not inconsistent with the complaint, constituting a defense to such new matter in the answer, and the plaintiff may in all cases demur to the answer containing new matter, where upon its face it does not constitute a counter-claim or defense; and the plaintiff may demur to one or more of such defenses or counter-claims, and reply to the residue of the counter-claims."

Under this section the reply was clearly a departure; for the allegations of the reply are not consistent with the

complaint, and do not constitute a defense to the plea of contributory negligence set up in the answer, and permit the plaintiff to recover upon his original complaint.

[9]   Another test laid down by the courts for determining the question as to whether a reply constitutes a departure from the complaint often applied by the courts is determined by a negative answer to the inquiry whether evidence of the facts alleged in the reply is admissible under the allegations of the complaint. 6 Enc. Pl. & Pr. 462; Mayes v. Stephens, 38 Or. 512, 63 Pac. 760, 64 Pac. 319; Swain v. Knapp, 34 Minn. 232, 25 N. W. 397; Smart v. Burquoin, 51 Wash. 274, 98 Pac. 666; Wabash R. R. Co. v. Bhymer, 214 Ill. 579, 73 N. E. 879; 7 Standard Enc. Pro. 119.

In the case of Smith v. Nichols, 35 E. C. L. 88, Chief Justice Tindall said:

"The short answer to that objection is that that which is a departure in pleading is a variance in evidence; and, if the evidence in support of the replication would sustain the allegation in the declaration, there is no departure."

And in the case of Caldwell v. Gale, 11 Mich. 77, the court said:

"What would not in a replication be a departure in pleading may be given in evidence * * * under the general issue."

A very interesting discussion of the question of departure in pleading will be found in the case of Union Pacific Ry. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983. In the opinion, written by Mr. Justice White, reference will be found to practically all the standard text-books dealing with the subject. True, in that case the departure was "from law to law," while in the present case the departure is "from fact to fact;" still the same principle governs.

It could not be contended with any degree of logic that the plaintiff in the present case, assuming that the reply had not been filed, could have offered proof of the fact that his injuries were occasioned by reason of the negligence of the engineer in charge of the engine upon the

main track, under the allegations of his complaint; for it is well settled that a different cause of injury than the one alleged cannot be proven. 29 Cyc. 583. Now to permit proof of such facts and a recovery upon such proof is to permit the plaintiff to recover for an injury set up for the first time in his reply, which, as shown, is contrary to all rules of pleading. Appellee's remedy, in case he elected not to stand upon the primary negligence alleged in his original complaint, was to have moved the court for leave to amend his complaint, and upon such leave being granted he could have set up the facts in his complaint, which appear in his reply.

Appellee could, in the first instance, have set up in different counts in his complaint as many different causes of action as the facts in the case might warrant, provided they all arose out of the same transaction or transactions connected with the same subject of action. Code 1915, § 4105. Under this provision of the Code, he could have alleged primary negligence in one count, "last clear chance" in another, and willful injury in a third, provided all were connected with the same subject of action, which in this case would be the injuries received by the appellee.

Our conclusion that this reply is a departure "from fact to fact" must be correct; otherwise there would be no end to pleading, and a defendant would experience much difficulty in driving the plaintiff to an issue. Were this not true, it would be possible for a plaintiff to retreat from "fact to fact," hoping eventually to find some fact upon which he could plant his feet that the defendant could not deny. Suppose in the present case that the defendant could deny the matters set up in the reply by a formal pleading, or that it should set up contributory negligence of the plaintiff as a defense, and plaintiff then should file a further pleading in answer to such denial, setting up some neglect of duty on the part of the man who flagged his car, or neglect of duty upon the part of the switchman; for example, that he could have prevented the injury by switching him into a clear track. This supposed

case shows the necessity for fixed rules in the matter of pleading.

Appellee, in a supplemental brief filed since the submission of the cause, argues, however, that the question of departure is not properly here for consideration, because: (1) It was raised, or attempted to be raised in the trial court by objection to the filing of the reply, instead of by demurrer or motion; (2) that the ruling of the court upon such objection is shown only by the bill of exceptions, whereas such ruling, not occurring upon the trial of the cause, should appear as a part of the record proper; and (3) the supplemental transcript showing the action of the court in this regard is not printed. There is perhaps some merit in these contentions; but, as we are required to reverse the cause because the court submitted the issue of "last clear chance" to the jury, over the objection of the appellant, when there was no evidence justifying or warrantting the consideration of this issue, we will not enter upon a consideration of the questions suggested.

Passing now to a discussion of the alleged error by the court in submitting to the jury the question of the liability of the appellant under the doctrine of "last clear chance." At the conclusion of appellee's case in chief appellant moved the court to withdraw from the consideration of the jury the question of the alleged negligence of the engineer, because no evidence had been introduced by the appellee, tending in any manner to establish such fact. This motion was overruled. Again, at the conclusion of all the evidence, appellant renewed its motion. The trial court, over appellant's objection, by certain instructions submitted to the jury the question of the company's liability under the doctrine of "last clear chance," predicated upon the alleged negligence of the engineer in failing to use due care to avoid a collision between his engine and the car upon which appellee was carried down upon the main track.

[10] It is well settled that an instruction not based on the evidence is erroneous and should not be given. See the many cases cited in Century Digest, "Trial," § 596.

In the case of Emison v. Owyhee Ditch Co., 37 Or. 577, 62 Pac. 13, the rule was concisely stated by the Supreme Court of Oregon as follows:

"The rule is well settled that, when the court, in the absence of any evidence thereof, instructs the jury respecting a matter that is material to the cause, the charge is necessarily misleading and erroneous."

See, also, Barce v. City of Shenandoah, 106 Iowa, 426, 76 N. W. 747; Schlesinger & Mayer v. Scheunemann, 114 Ill. App. 459; Thompson on Trials (2d ed.) § 2315.

The substance of appellee's testimony regarding the collision with the engine was as follows: Thayer was signaled by one Quintana to stop the car upon which he was riding. He attempted to apply the brakes, but they would not catch. Quintana was standing near the point of the switch, and signaled Thayer to stop the car when he was about 25 yards distant. Thayer testified that he looked up when near the point of the switch, and saw an engine approaching, and almost immediately the car and engine collided, and from the shock he was thrown to the ground.

Clearly the above evidence did not tend in any degree to establish negligence or want of due care on the part of the engineer. There was no showing that the engineer could in any way have prevented the accident, or that he was remiss in his duty in any manner.

Passing now to a consideration of the evidence offered by the defendant on this phase of the case, as we must in order to determine the propriety of the instruction, the engineer, Rolls, testified, in substance, as follows:

"I had been switching cars, and had passed the point of the ice house switch going west, ran the engine some distance west to get clearance, and was signaled by the brakeman to return, was going forward toward the depot, and when the front of the engine had almost reached the point of the ice house switch I heard a man shout, looked to the left, and saw a box car directly opposite, about six feet away, the front of the car being approximately six feet in front of where I sat. I realized that the only way to avoid a collision was to run through the switch before the car reached it, so I opened the throttle and passed the switch about four feet ahead of the car. After I got in front of the car I slowed up and caught it and brought it to a stop. I could not get out

of the way of the car, because there was a caboose standing on the track in front of the depot, and the track was downgrade, and I realized that I would collide with this caboose, and probably kill some one in it, and perhaps myself, in case I ran into it."

There was no evidence as to the speed of the car or the engine, except statements of certain witnesses to the effect that the car was "going pretty fast;" no attempt to show that the engineer could, with safety, have run further down the track before stopping the car, or that another and different result would have been accomplished had he done so. Appellee made no attempt whatever to show that the engineer failed to stop the car in the only feasible manner, or that he was in any way remiss in his duty. Certainly it is apparent, and cannot be disputed, that the engineer acted in a proper manner when he ran in ahead of the car; otherwise there would have been a collision at the point of the switch, and the box car would have turned over.

[**11**] But appellee argues that the court could take judicial knowledge of the fact that the engineer could, with safety to himself have run further down the track toward the depot, and have stopped the car with less force, and this without any danger of collision with the caboose; hence this issue was properly submitted to the jury. We cannot agree with this contention, because the manner and method of operating a locomotive engine, the space within which, going at a given rate of speed, it can be brought to a stop, and the proper way to check the speed and bring to a stop a runaway car are not matters of common or general knowledge. These matters are known only by men experienced in railroad operations.

"Matters of which a court will take judicial notice must be a matter of common and general knowledge, not merely the knowledge of specialists or experts." Jones on Evidence, § 105a.

If the court, as claimed by appellee, take judicial notice of the fact that the engineer could, by running further down the track, and by operating his engine in some other manner, have avoided the shock which appellee claims

threw him from the car, there would be but few matters, indeed, which a court could not judicially notice, and but slight necessity for introducing evidence in a case. If this were true, where an employé was injured in the operation of a factory, a mine, in the construction of a building, or in any other of the various vocations in which men engage, all that he would be required to establish would be the fact that he was injured in a given manner. and then the court would judicially know, without proof, just how such machinery or appliance should have been operated or constructed, and such judicial knowledge could not be controverted by proof. The mere statement of the proposition shows its utter fallacy.

In the case of Union Pacific Ry. Co. v. Shannon, 33 Kan. 446, 6 Pac. 564, the jury found, without evidence to support the same, that an engineer could have stopped a train going at a speed of 45 miles an hour in a space of from 350 to 375 feet. The court said:

"It is not within the general knowledge of persons in what space an engine or train can be stopped going at the speed of 45 miles an hour, and equipped with the appliances as the one operated by the company at the time of the accident. To determine how long it takes to stop an engine or train requires experience in the running of trains and in checking their speed, or opportunities on the part of a person giving opinion thereof to speak as an expert. Railway Co. v. Stewart, 30 Kan. 226 [2 Pac. 151]. This was not a subject upon which the jury could use their own judgment, and, if any one of the jury had any particular knowledge on the subject, he ought to have been sworn and examined as a witness."

In the case of Kotila v. Houghton County St. Ry. Co., 134 Mich. 314, 96 N. W. 437, the court held that the jury could not assume, in the absence of evidence on the subject, that an electric car, going downgrade at a great rate of speed, could have been stopped in 150 feet with the ordinary appliances.

Prof. Wigmore (section 2570, Wigmore on Evidence), speaking of judicial notice by the jury's own knowledge, says:

"In general, the jury may in modern times act only upon evidence properly laid before them in the course of the trial.

Thayer v. D. & R. G. R. R. Co., 21 N. M. 330.

But, so far as the matter in question is one upon which men
in general have a common fund of experience and knowledge,
through data notoriously accepted by all, the analogy of ju-
dicial notice obtains to some extent. and the jury are allowed
to resort to this information in making up their minds."

But the learned author further observes:

"But the scope of this doctrine is narrow; it is strictly lim-
ited to a few matters of elementary experience in human na-
ture, commercial affairs. and everyday life."

From the foregoing it is evident that the court should
not have submitted to the jury the question of the lia-
bility of the appellant, under the doctrine of "last clear
chance," because there was no evidence introduced tend-
ing to establish any negligence or want of care on the
part of the engineer.

[12] Passing now to a consideration of the remain-
ing questions presented, the next point to be noticed is
the alleged error on the part of the trial court in permit-
ting appellee to testify as to his former experience in simi-
lar work. This requires but slight consideration. Appel-
lant in its answer alleged, as one ground of defense, that
appellee assumed the risk of such employment. The
cause of action set up in the complaint was that the brake
upon the car was defective, and by reason of such defect
the accident resulted.

Where a cause of action is based upon alleged negli-
gence of the master in failing to use due care in seeing
to it that the brake upon a box car which the servant is
instructed to run down the switch to a designated point,
and there stop by applying the brake, is in proper repair,
and the master has pleaded "assumption of risk," it is
proper for the servant to prove his lack of experience in
such work for the purpose of disproving such defense, as
such evidence tends to show that he did not know and
appreciate the danger.

Labatt's Master and Servant, § 1186a, summarizes the
rule as to the assumption of risk in the following language:

"The servant assumes all the ordinary risk of the service.
and all of the extraordinary risk; that is, those due to the

master's negligence of which he knows and the dangers of which he appreciates."

In the present case the servant was not employed by the appellant as a brakeman, but only as a common laborer for the purpose of icing cars. He was directed by the master to run the car down to the switch, and it certainly could not be contended with any degree of logic that he assumed the risk of the master's negligence in regard to the brake, unless it appeared that he was an experienced brakeman, and could know and ascertain by turning the brake that it was out of repair, or by other means which an experienced man should have adopted. There was no error in permitting proof of appellee's inexperience.

[13] The sixth point urged is alleged error in overruling appellant's objection to the following question propounded to appellant on direct examination:

"You testified, on your direct examination, as to certain physical labor which you performed before you were injured. Are you able at the present time, and in your present condition, to follow any of these occupations?"

The objection interposed was that the question called for the conclusion of the witness and invaded the province of the jury.

"The physical ability or inability of a person to do work, or perform any act may be proven by the direct testimony of the party himself." 2 Ency. of Evidence, 846.

The fact sought to be elicited by the question was as to whether the witness was able to perform the acts of manual labor since the injury which he had testified that he followed prior thereto. This was a fact to which he could testify.

In the case of Kilne v. K. C., St. J. & C. B. R. Co., 50 Iowa, 656, a question of similar import was held proper, the court saying:

"It was a fact purely as to whether plaintiff could do the specified work in his present condition."

To the same effect see People v. Tubbs, 37 N. Y. 586.

The seventh point is trivial and need not be considered. Neither will the eighth point be considered. This involved alleged error in not striking out the testimony of the witness Dr. Rolls taken on the former trial of the cause, and read to the jury because of the absence of the witness at the time of the trial. As the witness will probably be present at the next trial, and as his testimony may tend to prove the issues then submitted to the jury, no comment will be made on this point.

Nor is there merit in the ninth point discussed, which related to the refusal of the court to permit appellant to cross-examine Miguel Abeytia, a witness for the appellee, as to the condition of the car; for, if it be conceded that the right existed, it appears from the transcript of the evidence that appellant did ask this witness later during the examination if he had examined the brake apparatus, and he said that he had not and knew nothing about it; so, if there was error, it was cured by the party later asking the witness the same question, which was answered.

[14] The court, over appellant's objection, permitted appellee to read to the jury the table of mortality based on American experience, found at page 885, vol. 20, Am. & Eng. Ency. of Law. This appellant claims was error, for two reasons: First, that there was no proof that appellee's injuries were permanent; and, second, that no sufficient foundation for the introduction of such table was established.

As to whether the evidence established the fact that the injuries were permanent need not be considered, as such fact may be established upon the subsequent trial, if it was not so established in the former trial, as contended by appellant. The rule only need be stated, which, as set forth in volume 7, Ency. of Evidence, p. 426, is as follows:

"In order to justify the admission of evidence of life expectancy, the evidence must establish the fact that the injury was permanent. And it is not sufficient that the evidence shows that the injury was serious. But the mere fact that the evidence as to the permanency of such disability is conflicting will not necessitate the exclusion of the evidence."

And, if there is substantial evidence tending to show that the injuries are permanent, such tables are properly received in evidence:

[15] The second ground of the objection was based upon the theory that no sufficient foundation was laid for the introduction of the mortality table appearing in volume 20, Am. & Eng. Ency. of Law (2d ed.) at page 885, for the reason that there was no proof of its authenticity or accuracy. In support of this contention appellant cites and relies upon the case of Notto v. Atlantic City R. Co., 75 N. J. Law, 826, 69 Atl. 968, 17 L. R. A. (N. S.) 1138, 127 Am. St. Rep. 835. This case is directly in point and upholds appellant's theory, but we are unable to agree with the reasoning of the court. Indeed, no other case is cited so holding, and the note appended to this case in the L. R. A. report clearly evidences the fact that the courts of the country, without exception, hold otherwise. The author of the note referred to says:

"It is a generally recognized rule that mortality tables, as published in standard encyclopedias, are admissible in evidence without further proof of their authenticity."

In the case of Shover, Adm'r, v. Myrick, 4 Ind. App. 7, 30 N. E. 207, the court, after reviewing many authorities on the subject, says:

"From what has been said we think it fairly deducible that proof of the probable longevity of a person of a given age and conditions, as well as the present value, annuities, and estates depending upon future contingencies, may be effected in any or all of the following ways:

"(1) The court may take judicial knowledge of the United States Mortality Tables, and perhaps other standard tables of the kind and character heretofore spoken of

"(2) Standard tables showing mortality rates and expectancies of human lives at certain ages and under certain conditions, and probable longevity, as well as the present worth of annuities, etc., may be used as evidence, under proper instructions as to their use, in the trial of causes involving such controversies as those hereinbefore alluded to.

"(3) Expert witnesses may testify as to results and conclusions arrived at by them with reference to these subjects, and such witnesses may refer to the tables and data upon which their knowledge is based, in whole or in part, as a means of refreshing their memories."

Thayer v. D. & R. G. R. R. Co., 21 N. M. 330.

We agree fully with this conclusion; hence it follows that no error was committed in admitting the mortality table in question.

Points 11 and 12 relate to the sufficiency of the evidence, and will not be further considered, as the case must be retried. Point 13 relates to the refusal of the court to strike the amended reply from the files at the conclusion of plaintiff's case. This question has been fully discussed, and requires no further consideration.

Instruction No. 3 given to the jury by the court of its own motion was as follows:

"The jury is instructed that in this class of civil cases any fact that is asserted by one side and denied by the other can only be established in law by a preponderance of the evidence, and the burden of proof is therefore on the plaintiff to establish all of the material facts alleged in his complaint by a preponderance of the evidence, and likewise the burden of proof rests upon the defendant to prove by a preponderance of the evidence the allegations of contributory negligence and assumption of risk set forth in defendant's amended answer."

In regard to this instruction appellant in its brief says:

"The question to be here specifically considered is that part which instructs the jury that the burden of establishing the defense of 'assumption of risk' is upon the defendant. Such is not the law. The plaintiff is presumed to assume all of the ordinary risks incident to his employment. Primarily assumption of risk, so far as it relates to ordinary risks incident to the employment, is a question of law, and not of fact. Where the risk is not ordinarily incident to the employment, the burden of proof is upon the defendant. When the servant shows that the injury received was in consequence of a risk not ordinarily incident to the employment, growing out of the master's negligence, the burden is then upon the master to show the servant knew and understood the increased danger." King v. Ford R. L. Co., 93 Mich. 172, 53 N. W. 10; Swoboda v. Ward, 40 Mich. 423.

"A servant is presumed to know and assume the obvious risks ordinarily and usually incident to the employment which he undertakes." 8 Ency. Ev. 520.

It requires evidence to rebut this proposition. 8 Ency. Ev. 522.

[16] We fully concur in the above statement of the law on this subject, but do not think that it established

the fact that the instruction in question was erroneous. Plaintiff's complaint was founded upon the alleged negligence of the master in failing to see to it that the brake was in proper repair. The portion of the answer, upon which the foregoing instruction was predicated, reads as follows:

"(1) Defendant alleges that, if the brakes on the car mentioned in plaintiff's complaint were defective, as alleged, then such defects were open and obvious and apparent to plaintiff, and that plaintiff saw and comprehended any and all danger incident thereto, if any danger there was with respect to said brakes, or by the exercise of due care and caution upon his part could have seen and comprehended any and all danger, if any danger there was incident to any or all of such conditions."

The answer on its face shows that the injury received was in consequence of a risk not ordinarily incident to the employment, which grew out of the master's negligence; hence the burden was upon the master to show that the servant knew and understood the increased danger. As an abstract statement of the law, it not appearing that defendant was a common carrier by railroad engaged in interstate commerce, the instruction might be subject to criticism, but, as applied to the pleadings in this case, it was proper.

The thirteenth instruction given by the court of its own motion was as follows:

"You are further instructed that it is the duty in law for the defendant to furnish safe and suitable brakes, brake appliances, and brake apparatus upon its cars and any cars operated by it, and keep the same in suitable condition for use upon said cars.

[17] By this instruction the jury was told that it was the absolute duty of the railroad company to furnish safe and suitable brakes, brake appliances, and brake apparatus and keep the same in proper condition for use upon its cars, thus making the railroad company an insurer to that extent. This is not the rule at common law, and we have no statute in this state which makes it the absolute duty of a railroad company to so equip its cars. Tested by the

common law or by our local statutes, the instruction was clearly erroneous. C. O. & G. Co. v. Holloway, 114 Fed. 458, 52 C. C. A. 260; C., B. & Q. R. R. Co. v. Mercker, 36 Ill. App. 195; P. D. & E. Co. v. Hardwick, 48 Ill. App. 562; Colorado Central R. R. Co. v. Ogden, 3 Colo. 499; Carelton M. & M. Co. v. Ryan, 29 Colo. 401, 68 Pac. 279; C., B. & Q. R. R. v. Oyster, 58 Neb. 1, 78 N. E. 359; Hughley v. City of Wabasha, 69 Minn. 245, 248, 249, 72 N. W. 78; Bellville Pump & Skein Works v. Bender, 69 Ill. App. 189, 192; Gormully & Jeffery Mfg. Co. v. Olsen, 72 Ill. App. 33; C. & E. I. R. Co. v. Garner, 78 Ill. App. 281, 285; N. Y., T. & M. R. Co. v. Green, 90 Tex. 257, 266, 38 S. W. 31; Wells v. Coe, 9 Colo. 159, 160, 11 Pac. 50; Sampson M. & M. Co. v. Schaad, 15 Colo. 197, 199, 25 Pac. 89; Moffat v. Tenney, 17 Colo. 189, 30 Pac. 348; B. & C. R. R. Co. v. Liehe, 17 Colo. 280, 283, 29 Pac. 175; Orman v. Mannix, 17 Colo. 564, 576, 30 Pac. 1037, 17 L. R. A. 602, 31 Am. St. Rep. 340; U. P. R. Co. v. O'Brien, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766; Deane v. Light & P. Co., 5 Colo. App. 521, 524, 39 Pac. 346; D. & R. G. R. R. Co. v. McComas, 7 Colo. App. 121, 124, 42 Pac. 676; Maydole v. D. & R. G. R. R. Co., 15 Colo. App. 449, 452, 62 Pac. 964; Floyd v. C. F. & I. Co., 18 Colo. App. 153, 156, 70 Pac. 452; McKean v. C. F. & I. Co., 18 Colo. App. 285, 289, 71 Pac. 425; Roche v. D. & R. G. R. R. Co., 19 Colo. App. 204, 308, 73 Pac. 880.

[18] If, however, the evidence disclosed that the railroad was a common carrier engaged in interstate commerce, the instruction correctly stated the law; for by section 2 of the act of Congress of April 14, 1910, amendatory to the federal Safety Appliance Act of 1893, (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. §§ 8605-8612]), all cars subject to the provisions of that act are required to be equipped with "efficient hand brakes," and this duty is absolute. Where the Safety Appliance Act applies, it imposes an absolute liability upon the carrier. Great Northern Ry. Co. v. Otos, 239 U. S. 349, 36 S. Ct. 124, 60 L. Ed. ——, where cases decided by the Su-

preme Court of the United States so holding will be found cited.

Whether the evidence in this case establishes the facts necessary to warrant the application of this statute need not be determined, in view of the fact that we are required to reverse the case on other grounds. On a subsequent trial any error in this regard can be avoided by the trial court by adhering to the law as above announced.

It is perhaps proper to say that the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. §§ 8657-8665]) has no application to this case under the pleadings and evidence; hence requires no consideration.

For the reasons stated, the judgment will be reversed, and the cause remanded, with directions to the trial court to grant appellant a new trial; and it is so ordered.

HANNA and PARKER, J.J., concur.

## ON MOTION BY APPELLEE TO REQUIRE CLERK TO ISSUE MANDATE.

ROBERTS, C. J.—[19] Appellee recovered a judgment in the district court of Santa Fé county against the appellant for $5,000 damages, costs of suit, etc. Upon appeal the cause was reversed and ordered remanded for a new trial upon the merits. Appellant had expended something over $200 for transcript of record, printing the same, and costs advanced to the clerk of this court. Under section 4282, Code 1915, appellant having prevailed in this court, judgment was entered against appellee for the costs of this appeal. There was a small balance due the clerk for costs not covered by the amount advanced by the appellant, which the appellee paid, thereupon he requested the clerk to issue a mandate. This the clerk refused to do until appellee should pay into his hands an amount of money sufficient to satisfy the judgment which appellant had obtained against him in this court for costs. The refusal of the clerk was based upon the assumption that rule 15 of this court, adopted July 15, 1915, required the unsuccessful party in this

court to satisfy any judgment that might be here rendered against him for costs before he could ask for a mandate.  The rule in question reads as follows:

"Upon denial of a petition for rehearing, or if within twenty days after a decision no petition for rehearing is filed, a mandate shall issue to the court below, as the cause may require, for execution upon the payment by either party of the costs incurred in this court."

Section 4289, Code 1915, provides a remedy for the collection of a judgment for costs by execution.  Was it the intention of the court when the above rule was adopted, to provide a party who may have recovered a judgment against his adversary in this court for costs, with an additional and arbitrary remedy for the collection of his judgment?  We think not, nor is the language of the rule susceptible of any such interpretation.  It reads, "Upon payment by either party of the costs incurred in this court" the mandate shall issue, thus clearly evidencing that the only object in view was the protection of the clerk in the matter of costs, which under the law he is required to collect and turn over to the state treasurer. Whether a successful party can collect his judgment does not concern the court.  It gives to him, upon application, all the remedies which the law affords.  The above rule was never designed to supply him with an arbitrary remedy, or to prevent an unsuccessful party in this court from securing a mandate so that he could have the cause remanded to the district court and there secure a trial on the merits.  To hold otherwise would, where the unsuccessful party here was without means, effectually cut him off from all right to litigate his rights, however meritorious might be his cause of action.

If no further costs are due the clerk, he will issue the mandate; and it is so ordered.

HANNA, J., concurs.

PARKER, J., dissents.