588 P.2d 563
**James R. LEWIS, Plaintiff-Appellee,**

v.

**Delora ENGLISH, Defendant-Appellant.**

**No. 3206.**

Court of Appeals of New Mexico.

Dec. 12, 1978.

David H. Pearlman, Albuquerque, for defendant-appellant.

William K. Stratvert and Robert H. Clark, Keleher & McLeod, P. A., James C. Ritchie, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Lewis sued English for damages sustained in a motor vehicle collision in Bernalillo County. English counterclaimed based on the doctrine of last clear chance. The trial court granted Lewis summary judgment on English's counterclaim and English appeals. We affirm.

These parties are in the Court of Appeals for the second time as a result of the same accident. In the first appeal, *Catalano v. Lewis*, 90 N.M. 215, 561 P.2d 488 (Ct.App. 1977), English was represented by Catalano, her natural parent and guardian ad litem. In that case, which was filed in *Valencia County*, English sued Lewis on the theory of last clear chance. Summary judgment in favor of Lewis was affirmed by this Court but affirmance was based upon the fact that English was contributively negligent as a matter of law. In reviewing the evidence presented in *Catalano*, including the affidavit of English's expert witness, we concluded as a matter of law the doctrine of last clear chance was not applicable. However, the opinion stated that:

. . . If the evidence in the case of *Lewis v. English*, supra, [the instant case], *is supplemented on the issues decided in this case*, this opinion shall not control, otherwise it shall control. . . [Emphasis added.] [90 N.M. at 218, 561 P.2d at 491.]

The purpose of this language was to avoid the doctrine of res judicata and to accord English a second opportunity to proceed against Lewis under the doctrine of last clear chance. It was fair to give plaintiff this benefit because Lewis created two separate and independent actions by filing suit against English in *Bernalillo County* four months after the *Catalano* case had been filed in Valencia county. Had Lewis filed a counterclaim in the *Catalano* action in *Valencia County* a single appeal would have resolved all the issues.

In *Catalano*, the following facts were established:

At the place of the intersection collision, Coors Road, a four-lane highway, ran north and south. St. Joseph's Drive, a two-lane road, ran east, from the west end of Coors Road, to the University of Albuquerque. The posted speed limit on Coors Road was 50 m. p. h. The intersection was controlled by a traffic signal with an intermittent flashing amber light for north and southbound traffic. No turning lanes were provided for southbound traffic turning left onto St. Joseph's Drive. There were no adverse weather conditions.

Delora was driving south on Coors Road in the right-hand lane. As she approached the intersection with St. Joseph's Drive, a vehicle in front of her, also in the right-hand lane, was travelling at 50 m. p. h. A truck ahead of this vehicle was moving in the left-hand lane. Delora swiftly zigzagged past these vehicles and made an illegal left turn from the right-hand lane on St. Joseph's Drive into the northbound lanes of Coors Road. At this moment, defendant Lewis, driving north on Coors Road, was at or close to the intersection. Delora's vehicle was right in front of him. Defendant applied his brakes and attempted to turn right to avoid the accident. In the matter of time, the collision occurred at the snap of the fingers. [90 N.M. at 217, 561 P.2d at 490.]

The solitary question in this appeal is: Did English present supplementary evi-

dence to avoid the conclusion reached in *Catalano* on last clear chance?

Lewis' deposition was the only evidence advanced by English to supplement the record. This deposition testimony was not sufficient to sustain the English counterclaim of last clear chance.

In his deposition, Lewis states that he saw English when he was about 100 yards from the intersection light. English was driving south on Coors Road toward the intersection; Lewis was travelling north at 50 m. p. h. or 73 feet a second. English's car slowed a bit. Lewis then checked the traffic light, and when he looked to the road again, he saw the English car in front of him. As the English car darted in front of him, he simultaneously hit his brakes and the English car. The testimony is uncontradicted.

In seeking to establish that Lewis had the last clear chance to avoid the accident, English submitted an affidavit by an expert witness which stated that:

If Mr. Lewis had decided to panic stop when he first perceived the [initial braking and slowing] movement of the Pinto he could have stopped well before reaching the intersection and the point of impact.

The factual questions crucial to this appeal are at what point did Lewis become aware of English's danger and what opportunity did Lewis have to prevent the accident. The expert assumes that Lewis was aware of her danger at the point he saw her car slow, i. e., when Lewis was 100 yards from the intersection. But the evidence does not support this assumption. Too many questions remain unanswered.

When Lewis was a hundred yards south of the intersection, at what distance north of the intersection was the English car positioned? At what speed was it travelling south and to the point of collision? At what point in time thereafter did the car swerve to the left at the intersection, cross almost four lanes of traffic and dart in front of the Lewis car? What period of time elapsed from English's sudden left turn to the point of collision? At what

point in time, if at all, could Lewis see and know that the English car had made the sudden left turn and was travelling in Lewis' direction? These facts are all unknown.

■ What we do know is that it took both parties four seconds to reach the point of collision in Lewis' lane of traffic. The expert's opinion does not state how Lewis in this four second interval could have prevented the accident. When Lewis first saw English slow down, he did not have a duty to make a "panic stop." Before English completed the left turn and created a dangerous condition which placed her in a position of peril, Lewis had no duty to react with proper caution. His duty arose after the left turn was made and the English car was within his vision. This was almost instantaneous. It could not have prevented the accident. *Catalano* is dispositive on the issue of last clear chance. In *Catalano*, we said:

. . . The defendant must have a clear chance, by the exercise of ordinary care, to avoid injury to the plaintiff. (Citation omitted). Were we to apply mathematical computations necessary, we hold, as a matter of law, that last clear chance was not applicable. [90 N.M. at 217, 561 P.2d at 490.]

For the first time during oral argument, English takes us back to *Thayer v. D. & R. G. R. R. Co.*, 21 N.M. 330, 154 P. 691 (1916) where the court said:

. . . In other words, in an action predicated upon the doctrine of "last clear chance," it must appear that plaintiff was negligent, but that such negligence was not the proximate cause of the accident, but that the proximate cause thereof was the negligence or want of due care on the part of the defendant. [21 N.M. at 347, 154 P. at 695.]

English fails to present any evidence that Lewis' negligence caused the accident.

Furthermore, a careful reading of *Thayer* discloses that:

. . . *Where the negligence of the plaintiff continues up to the very moment of the injury* and is contemporaneous and

concurrent with the negligence of the defendant, *and where the exercise of reasonable diligence before the injury would have warned the plaintiff of his danger and have enabled him to escape by his own efforts, there can be no recovery.* . . . [Emphasis added.] [21 N.M. at 353, 154 P. at 697.]

■ "The doctrine [of last clear chance] cannot be invoked where there is concurrent negligence such as where the injured party's negligence continues up to the very moment of injury." *Bryan v. Phillips*, 70 N.M. 1, 5, 369 P.2d 37, 39 (1962). English can make no reasonable argument that her negligence stopped at any time prior to the accident. From the record before us, we cannot assume that English was unconscious of the danger in time to avoid the injury. Her view of the area surrounding the intersection was clear and unobstructed. We can only conclude that English drove blindly with respect to traffic approaching the intersection from the south, or that she attempted to speed through Lewis' lane of traffic before he arrived at the intersection.

*Thayer* and *Bryan* make it clear that: [I]f the plaintiff could show that he was unconscious of the threatened danger in time to have avoided the injury, and that the defendant actually saw or knew of the danger to which the plaintiff was exposed, and also knew or should have known that the plaintiff was unconscious thereof, and the defendant failed to use due diligence to avoid the injury, the plaintiff would be entitled to recover. [21 N.M. at 353, 154 P. at 697–98.]

There are no facts in the record, nor reasonable inferences to be drawn therefrom, that fall within the perimeter of that rule.

The overwhelming weight of authority denies the application of the "last clear chance" doctrine where the party to be charged is required to act instantaneously. *Lucero v. Torres*, 67 N.M. 10, 350 P.2d 1028 (1960); *McCoy v. Gossett*, 79 N.M. 317, 442 P.2d 807 (Ct.App.1968).

■ From the facts before us we are loathe to condone English's reckless driving that led to her tragic injury. In the hands of a reckless driver, the automobile is a dangerous instrumentality that often performs the dance of death. "A plaintiff who is so reckless as to be in disregard of his [or her] own safety cannot be protected by the doctrine [of last clear chance]." *Handley v. Halladay*, 92 N.M. 76, 582 P.2d 1289, 1290 (1978).

■ The district court correctly granted summary judgment on the issue of last clear chance. The only issue in the instant case to submit to the jury on the matter of liability of English is whether Lewis was contributively negligent in failing to see English after the left turn was made, and whether this negligence contributed to cause the accident.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ. (concurring in result only).