**Patrick PRICE, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**Civ. A. No. 85–K–600.**

United States District Court, D. Colorado.

May 18, 1987.

---

Barry Roseman, Denver, Colo. for plaintiff.

William A. Tuthill, III, Pendleton & Sabian, Denver, Colo. for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This civil rights and breach of contract case involves an employment dispute in which plaintiff, Patrick Price, alleges his employer, Federal Express Corporation, breached express and implied covenants of good faith and fair dealing, engaged in outrageous conduct, and violated provisions of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981 and 2000e–3(a).

Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1332. The case is before me on Federal Express' motion for summary judgment.

## I.

## BACKGROUND

Patrick Price is a male Caucasian citizen of the United States and was employed by Federal Express Corporation from December 20, 1976, until January 22, 1984. He satisfactorily advanced in pay and job responsibility throughout his employment. On February 1, 1982, Federal Express promoted him to the management position of operations supervisor in Salt Lake City, Utah. While serving as operations manager in Salt Lake City, plaintiff had the authority to discharge employees under his supervision, provided he had the concurrence in such a decision of: (1) his immediate supervisor, (2) the Federal Express dis-

trict supervisor, and (3) the Federal Express zone personnel manager.

In August, 1983, Price terminated the employment of Karen ("Penny") Lathon, an hourly employee under his supervision along with two other hourly employees under his supervision. In firing Ms. Lathon, Price obtained the requisite concurrence of the three supervisors outlined above. Ms. Lathon, a Black female citizen of the United States, filed an internal complaint of race discrimination under Federal Express' "Guarantee of Fair Treatment Program." The Federal Express supervisors did not concur with Price's decision to fire the non-black employees. Consequently, in addition to claiming she was fired because of her race, Ms. Lathon's claim also contained a second, separate allegation of race discrimination against Federal Express agents exclusive of Price, namely, Federal Express' subsequent re-instatement of two non-black employees for conduct similar to Ms. Lathon's. Thus, Federal Express supervisors re-instated the two non-black employees to their former positions while Ms. Lathon was not similarly reinstated to her former position.

Price testified, assisted, and participated in Federal Express' internal investigation of Ms. Lathon's complaint of race discrimination. Moreover, he provided information which supported Lathon's complaint of disparate treatment and which implicated Federal Express' district director and zone personnel manager in the unlawful employment practice allegedly perpetrated against Ms. Lathon. On November 7, 1983, Price was transferred to Denver, Colorado and remained an operations manager.

Price asserts that because of his participation in the prosecution of Ms. Lathon's race discrimination claims against Federal Express and its agents, Federal Express has subjected him to, *inter alia*, harassment and investigation of misconduct, coercion in accepting a lateral transfer to Denver, and constructive discharge. He also charges defendant took actions so as to preclude him from obtaining employment in Portland, Oregon.

## II.

### STANDARD OF DECISION

The established litany tells us that summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.Proc. In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

## III.

### FEDERAL EXPRESS' MOTION FOR SUMMARY JUDGMENT

Defendant's motion requests summary judgment on plaintiff's first, second, third, fourth, and fifth claims for relief.

A. *First Claim for Relief: Violation of the Civil Rights Act of 1964.*

In plaintiff's first claim for relief, he alleges defendant retaliated against him because he had opposed defendant's discharge of Ms. Lathon and because of his adverse actions against defendant in testifying, assisting, and participating in defendant's investigation of Ms. Lathon's race discrimination complaint.

In its brief in support of the motion for summary judgment, defendant does not controvert plaintiff's allegations. Rather, defendant argues plaintiff cannot prevail because he cannot establish defendant's discharge of Ms. Lathon was motivated by race.

At once, a genuine issue of material fact arises regarding defendant's conduct *toward plaintiff* which defendant does not

even address. Further, defendant fails to recognize a white plaintiff may file a retaliation claim under 42 U.S.C. § 1981 or § 1982 where the white plaintiff objects to what he or she believed to be racially discriminatory conduct against a non-white person. *Sullivan v. Little Hunt Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404–05, 24 L.Ed.2d 386 (1969) (a community recreational corporation cannot legally expel a white member for advocating the cause of a Black seeking membership; the expelled member has standing to sue under 42 U.S.C. § 1982). Accordingly, the motion for summary judgment on the first claim is denied. Defendant's motivation for its conduct toward plaintiff is a genuine issue of material fact which must be decided by a jury. Further, this claim is cognizable and the white plaintiff has standing to sue for the conduct alleged.

### B. *Second Claim for Relief: Constructive Discharge.*

█ Related to the civil rights claim, defendant argues plaintiff's claim for constructive discharge is actionable under § 1981 *only if* a plaintiff can show the employer's actions were *intended* as an effort to force the employee to quit. The Tenth Circuit, however, recently held in *Derr v. Gulf Oil Corp.* 796 F.2d 340, 343–44 (10th Cir.1986), that proof of constructive discharge is determined by an objective standard (not a subjective "intent" standard), depending upon "whether a reasonable [person] would view the working conditions as intolerable." The Tenth Circuit quoted, with approval, the District of Columbia Circuit's observation that

> "[t]o the extent that [the employer] denies a conscious design to force [the employee] to resign, we note that an employer's subjective intent is irrelevant; *[the employer] must be held to have intended those consequences it could reasonably have foreseen.*" (emphasis added).
> *Clark v. Marsh*, 665 F.2d 1168, 1175 n. 8 (D.C.Cir.1981).

Thus, the constructive discharge claim survives the motion for summary judg-ment, a showing of subjective intent is not necessary for the claim to survive.

### C. *Plaintiff's Third and Fourth Claims: Good Faith and Fair Dealing.*

Plaintiff's third claim for relief alleges a breach of an implied covenant of good faith and fair dealing. His fourth claim for relief alleges defendant expressly represented it would treat its employees fairly thus constituting an expressed covenant of good faith and fair dealing which it allegedly breached.

Defendant argues plaintiff has not alleged, nor do the facts support, the existence of a fixed term to plaintiff's employment. Because there was no fixed term, defendant asserts plaintiff's employment contract was a contract of employment at will. "Absent special consideration or an express stipulation, an indefinite general hiring is terminable by the employer at will. *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1978)." Defendant's motion at 7.

Plaintiff alleges, however, "special consideration" and "an express stipulation" of sorts based on certain representations made to him by defendant.

### 1. *Implied good-faith and fair dealing.*

Plaintiff argues Colorado recognizes an implied covenant of good faith and fair dealing as described in the *Restatement (Second) of Contracts,* § 205 (1981) as follows:

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

*See Ruff v. Yuma County Transp. Co.,* 690 P.2d 1296, 1298 (Colo.App.1984). In *Ruff,* the implied covenant of good faith and § 205 was recognized as a cognizable claim in Colorado when the agreement between the parties included the following language:

> The parties agree to fully cooperate and use their best efforts in the preparation

and the prosecution of applications referred to herein.

*Ruff* at 1298.

■ Just as the defendant in *Ruff, supra,* represented it would use its "best efforts" to complete the contract, defendant in the instant case represented to plaintiff, via the policy manual and the company newspaper, that each employee is guaranteed fair treatment and equitable dealing. Although the instant case involves representations made outside the provisions of the contract, such representational provisions operate as if they were written in the contract. *See Brooks v. Trans World Airlines, Inc.,* 574 F.Supp. 805 (D.Colo.1983), discussed *infra; see also Continental Airlines, Inc. v. Keenan,* 731 P.2d 708 (Colo. 1987), discussed *infra.*

Plaintiff also argues Colorado recognizes the statutory obligation of good faith contained in the Uniform Commercial Code, Colo.Rev.Stat. § 4–1–203 (1986).[1] *See Layne v. Fort Carson National Bank,* 655 P.2d 856 (Colo.App.1982). The statute and the case law, however, applying the U.C.C. provision apply to sale of goods contracts. No mention is made of service contracts. This is of no consequence, however, since plaintiff need not rely on the U.C.C. good faith provision for his theory of recovery.

Although Colorado has adopted § 205, plaintiff acknowledges that under certain circumstances the implied covenant of good faith and fair dealing is not recognized, e.g., *Pittman v. Larson Distributing Co.,* 724 P.2d 1379 (Colo.App.1985) (if the contract lacks "special considerations" or "express stipulations" as to the duration of employment, an indefinite hiring is terminable at will by either party without cause and without notice). In *Pittman,* however, no claim of an implied covenant of good faith was alleged. The plaintiff in that case was asserting his contract was for

"permanent employment"—an issue which should have been submitted to the jury. In the instant case, the claim is not that plaintiff was a permanent employee who was therefore owed a certain amount of good faith and fair dealing, rather, the claim is that defendant made certain representations to plaintiff and plaintiff was involved with the company from its inception such that the implied covenant applies to the special circumstances of this case.

Plaintiff contends the particular facts of this case support his claim based on the implied covenant of good faith and fair dealing. He recounts how he "joined a struggling new company and helped build it from the ground up" and how defendant informed him "that it would make every effort not to lay off employees except in the most extreme circumstances." Plaintiff further states how well defendant rated his work performance (plaintiff received a "6" on all his appraisals reflecting "outstanding" performance based on a possible score of "7"). Perhaps most importantly, defendant gave plaintiff and its other employees numerous, repeated, emphatic assurances that it would treat all its employees fairly.[2]

■ Amid all of its incantations of good faith and promises of fair treatment, defendant now, surprisingly and quite boldly, asks me to grant summary judgment against plaintiff's claim based on an implied covenant of good faith and fair dealing because plaintiff is a "mere" at-will employee who is owed nothing—not even fair treatment—and can be fired at the whim of the employer. I shall do no such thing. Employers must realize that if they are going to reap the profits and rewards of employee loyalty and enhanced workmanship which are coaxed by implied promises made to the workforce, then such em-

---

1. *Ruff* did not allow recovery under the U.C.C. good faith provision because it was held inapplicable to the case. Nevertheless, the implication of the decision is that a claim could be based on the U.C.C. good faith provision.

2. *See also Brezinski v. F.W. Woolworth,* 626 F.Supp. 240 (D.Colo.1986) (a dismissed employee stated a claim for breach of express and

implied contract against his former employee where the complaint alleged the employer expressly agreed, during the period of the employee's employment, that the employee would be discharged only for cause and that there was an implied agreement that he would be discharged only for just grounds and of good-faith).

ployers must be held to their word. Thus, plaintiff's claim for breach of an implied covenant of good faith and fair dealing survives the motion for summary judgment given the special facts of this case.

## 2. *Express good-faith and fair dealing.*

■ Even if the alleged facts of the instant case were not enough to justify the invocation of the implied covenant of good faith, they certainly support a more straightforward claim based on express representations of fair treatment. Enforcement of plaintiff's reasonable expectations of fair treatment, based on an employer's representations, is analogous to judicial enforcement of representations made in employment handbooks or manuals concerning procedures to be followed in discharge decisions. *Brooks v. Trans World Airlines,* 574 F.Supp. 805 (D.Colo. 1983); *Salimi v. Farmers Insurance Group,* 684 P.2d 264 (Colo.App.1984); *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

In *Brooks, supra,* the plaintiff was a furloughed employee who was suing based on his employer's alleged age discrimination and breach of contract. The defendant in that case argued, as does defendant in the instant case, that under Colorado law, a discharged employee has no recourse against his or her employer in the absence of a fixed term contract. Although I recognized this general rule in *Brooks,* I also recognized the exception to this rule when certain policies and provisions are set forth in an employee manual upon which employees reasonably rely.[3] In *Brooks,* I stated:

> In the past 50 years ... courts have shown an increased willingness to step between employer and employee. They have typically either recognized actions for wrongful discharge in violation of public policy, [citation omitted], a covenant of good faith in an employment

contract, [citation omitted], or found an implied contract in a personnel manual or an employer's specific policies. [citation omitted].

*Id.* at 808.

My reasoning in *Brooks* was based on the idea that the provisions of the policy manual were an integral part of the employment relationship such that it would be inequitable and judicially blind not to recognize those employment policies as part of the contract.

> Brooks accepted employment at TWA with a clear understanding that all or nearly all of management decisions made by or concerning him would be made in accordance with the Management Policies and Procedure Manual ... Throughout his career with TWA Brooks consulted and relied upon the MP & P in his daily decisions and promotions. His explicit willingness to continue to work for TWA under the terms and conditions set out in the MP & P create a basis for enforcing the MP & P's displacement rights against TWA.

*Id.* at 809–10.

At the time *Brooks* was decided, the Colorado Supreme Court had not ruled on this specific issue. In 1984, however, the Colorado Court of Appeals decided *Salimi v. Farmers Insurance Group, supra.* In *Salimi,* the court held an employee's allegation of breach of contract based upon his employer's demotion of the employee, allegedly in violation of the policies and procedures of the employer as set out in the policy manual, was sufficient to survive the employer's motion to dismiss. Under Colorado law, the argument that a policy manual can be construed as part of the employment contract was recognized. Thus, the legal theory of breach of contract was upheld. The court reasoned as follows:

> Plaintiff agrees that a contract of employment which states no definite term is

---

**3.** Plaintiff cites numerous passages in the company newspaper and in the Policy Manual which include the following representative comments:

> The key aspect of any manager's approach to disciplinary policies has to be based on fairness, common sense, and valid business deci-

sions ... anybody who feels he or she isn't being treated fairly can raise his [sic] hand and get some action ... the company's intentions are that everybody, no matter what their [sic] job or position, is going to get fair, consistent treatment ... [etc.]

considered to be indefinite and terminable at will by either party without incurring liability for breach of contract. However, he contends that defendant is contractually bound to follow the disciplinary provisions of its personnel manual ... Thus, [we hold] an employer's distribution to employees of handbooks or policy manuals which contain specific procedures for termination of employment, when relied upon by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures. [citations omitted].

*Id.* at 265.

In the wake of *Salimi,* a confusing array of inconsistent opinions has arisen. *See,* e.g., *Garcia v. Aetna Finance Co.,* 752 F.2d 488 (10th Cir.1984) (termination policy set forth in the employment manual was a unilateral expression of policy by the employer, not an employment contract between employee and employer for a definite term); *but see Churchey v. Adolph Coors Company,* 725 P.2d 38, 40 (Colo. App.1986), *cert. granted* September 29, 1986 (recognizing the "new rule" set forth in *Salimi* where employers become contractually bound by their employment manuals and policies therein). During the confusion, federal courts declined to exercise jurisdiction. *Ritter v. Colorado Interstate Gas Co.,* 593 F.Supp. 1279 (D.Colo.1984) (declining to hear state law breach of employment contract claims because of uncertainty regarding Colorado's readiness to modify the "at will" employment doctrine so as to afford discharged employees greater rights). Indeed, I also deferred to the state courts during this period regarding the issue. *See Gleason v. Board of County Commissioners of Weld County,* 596 F.Supp. 1561, 1562–63 (D.Colo.1984).

Recently, however, the Colorado Supreme Court in *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987) decided this issue in a definitive ruling set forth to end the confusion:

We granted certiorari to determine whether an employee may sue an employer for breach of contract on the theory that an employee manual, unilaterally published by the employer, may serve as the basis for altering the terms of an employment otherwise terminable at will ...

[E]ven if the prerequisites for the formation of a contract are not found, the employee would be entitled to enforce the termination procedures under a theory of promissory estoppel if he can demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures.

*Id.* at 710 and 712.

Thus, the Colorado Supreme Court, in an instructive and definitive ruling on this issue, has decided this issue in accordance with my 1983 decision in *Brooks v. Trans World Airlines, Inc., supra. See also McNitt v. Cherry Creek School District,* No. 85–K–1473 slip. op. (D.Colo. March 30, 1987) (holding under *Continental Air Lines, Inc. v. Keenan, supra,* that an employer may become bound by contract to the provisions in the policy manual). In *McNitt,* I stated:

The [Colorado Supreme] Court held "an employee originally hired under a contract terminable at will may be able to enforce the termination procedures in an employee manual" under one of two theories. *Id.* at 711. The first theory was one of offer and acceptance, with consideration, under the aegis of the employer's policies. *Id.* The second theory was one of promissory estoppel. *Id.* at 712.

*McNitt* at 6.

As the Supreme Court of New Jersey stated in *Woolley v. Hoffmann-La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257, 1271 (1985) [4], and which I find persuasive:

---

**4.** This decision was modified by 101 N.J. 10, 499 A.2d 515 (1985), but the modification did not disturb the language quoted in this opinion.

All that this opinion requires of an employer is that it be fair. *It would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege on those promises.* What is sought here is basic honesty: if the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. (emphasis added).

The simple way to attain that goal, however, is not to make representations in the company newspaper, *see* n. 3 *supra*, or to make statements throughout the Personnel Policy and Procedure Manual such as in the instant case where defendant boldly and proudly states:

> It is the policy of Federal Express to promote an open atmosphere which ensures fair treatment of all employees ...
> It is the policy of Federal Express to have a procedure for handling complaints which ensures fair and equitable treatment ... The objective of this policy is to ensure that the method of handling employee complaints within Federal Express *is done in a manner which is both fair and equitable.* (emphasis added).

Accordingly, defendant's motion to dismiss claims three and four is denied. Both express and implied covenants of good faith and fair dealing are capable of proof such that breach of those covenants would constitute a cognizable claim recognized by established law.

D. *Fifth Claim for Relief: Outrageous Conduct.*

■ In order to recover damages for emotional distress inflicted by "outrageous conduct", a claimant must demonstrate the defendant's conduct was so outrageous in character, and extreme in degree, that it goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized society. *King v. Burris*, 588 F.Supp. 1152 (D.Colo.1984);

*Bauer v. Southwest Denver Mental Health Center, Inc.*, 701 P.2d 114 (Colo. App.1985).

In *Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. 240 (D.Colo.1986), I dismissed a claim based upon alleged extreme and outrageous conduct where the plaintiff failed to allege a pattern of conduct *calculated to cause* emotional distress or a sufficiently egregious isolated incident. Again, the pleader should bear in mind that outrageous conduct is but a recently minted term for the tort of intentional infliction of mental suffering. It has its genesis in the intentional tort of assault, not breach of contract.

In *Brezenski, supra,* I set out the test found in *Rawson v. Sears*, 530 F.Supp. 776, 780 (D.Colo.1982) [5].

> ... [T]here is a certain threshold level of conduct that must first be established for the plaintiff to state a cause of action for outrageous conduct. *Rawson.* To meet this threshold, plaintiff must allege that: (1) defendant has engaged in a pattern of conduct that was intended to cause or recklessly did cause severe emotional distress, or (2) if the incident is isolated, defendant blatantly and severely harassed plaintiff.

As stated earlier, this is a civil rights and breach of contract case. There is no virtue in pleading a profusion of claims for relief when the law provides a well-established and straightforward remedy. Indeed, the practice is inimical to the interests of the litigants for at least two reasons. First, it delays prosecution of the case and increases costs because of the time spent in addressing motions. Second, it creates an expanded possibility for reversible error in the event the pleader is persistent or the trial judge is diffident. *See Zukowski, et al. v. Howard, Needled, Tammen & Bergendoff*, 657 F.Supp. 926 (D.Colo.1987). In the instant case, claims for relief based on breach of contract and civil rights violations provide the remedies contemplated by established law.

---

**5.** This decision has been distinguished on other grounds by my brother, Moore, in *Borumka v.*

*Rocky Mountain Hospital and Medical Service,* 599 F.Supp. 857, (D.Colo.1984).

Colorado law on this issue is well-stated in Pringle, 1 *Colorado Law Annotated* 41, § 4 at 58:

In order to recover on a claim of intentional infliction of emotional distress [by extreme and outrageous conduct], the plaintiff must establish by a preponderance of the evidence that the defendant engaged in outrageous conduct for the specific purpose and intent of causing severe emotional distress. Since one is held to have intended the known consequences of his acts, the intent requirement can be met by establishing that the defendant knew his conduct was certain or substantially certain to cause emotional distress to the plaintiff. Finally, since reckless conduct is equated with intentional action under the law of Colorado, the intent requirement can also be met by a showing that the defendant had facts in his possession by which he knew or should have known that his conduct would probably cause severe emotional distress to plaintiff, but nevertheless engaged in such conduct. These principles are set out in Colorado Jury Instruction (Civil) 2d 23:3 as follows:

Intent to cause severe emotional distress exists when one engages in conduct with a desire to cause severe emotional distress in another person, or when he knows his conduct is certain, or substantially certain to cause that result.

One whose conduct causes severe emotional distress in another person has acted recklessly if at the time he acted he knew, or as a reasonable person he had reason to know because of other facts which he did know, that there was a substantial probability that his conduct would cause severe emotional distress in another.

The tort of outrageous conduct has been recognized in the employment context in a number of circumstances: sexual harassment, *Wing v. J.M.B. Property Management, Corp.*, 714 P.2d 916 (Colo.App.1985); firing waitresses in alphabetical order, *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976); constructive discharge of an employee for failure to submit to a polygraph examination, *Moniodis v. Cook*,

64 Md.App. 1, 494 A.2d 212 (1985), *cert. denied* 304 Md. 631, 500 A.2d 649 (1985); unilateral reduction of disability benefits, *Holmes v. Oxford Chemicals, Inc.*, 510 F.Supp. 915 (M.D.Ala.1981), *aff'd*, 672 F.2d 854 (11th Cir.1982); unreasonable withholding of funds from an employee's last paycheck, *M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980); and termination of a long-term, loyal employee for failure to break off a dating relationshp with an ex-employee of the same company, *Rulon-Miller v. International Business Machines Corp.*, 162 Cal.App.3d 241, 208 Cal.Rptr. 524 (1984). Just being an insensitive churl, however, does not give rise to liability in tort for the intentional infliction of severe emotional injury.

The particularly egregious circumstances present in the above cited cases are not present in the instant case. Even when all of plaintiff's allegations are taken as true, defendant's conduct cannot sustain a finding of outrageous conduct under Colorado law. I realize such fact issues are routinely for a jury to decide. It is for the court to determine, however, in the first instance, "whether reasonable men could differ on the outrageousness issue." *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399, 401 (1978); *Blackwell v. Del Bosco*, 35 Colo.App. 399, 536 P.2d 838 (1975) *aff'd* 191 Colo. 344, 588 P.2d 563 (1976). If reasonable men would not disagree, then the court should not allow the issue to proceed to the jury. *Meiter, Blackwell.*

It is important to recognize how the standard of proof has changed with respect to a finding of outrageous conduct. It used to be the law in Colorado that the "preponderance of evidence" standard was required for a finding of outrageous conduct. The more stringent "beyond a reasonable doubt" standard, however, has been adopted by the Colorado Supreme Court in *Tri-Aspen Construction Co. v. Johnson*, 714 P.2d 484 (Colo.1986) and followed by the Tenth Circuit in *Jaurez v. United Farm Tools, Inc.*, 798 F.2d 1341 (10th Cir. 1986); and *Bradbury v. Phillips Petroleum Company*, 815 F.2d 1356, 1360 (10th Cir.1987).

Accordingly, since reasonable people must conclude that defendant's conduct fails to reach the level of egregiousness necessary to sustain a claim for outrageous conduct "beyond a reasonable doubt", the claim should not be submitted to a jury. Given the alleged facts of this case, a jury verdict against defendant for outrageous conduct would be subject to a judgment notwithstanding the verdict. Instead of allowing for that eventuality and permitting confusion at trial and needless delay, I grant the motion for summary judgment on this claim.

■ As an anticipatory rejoinder, plaintiff argues Colorado has adopted comment e of § 46 of the Second Restatement of Contracts which creates liability "from an abuse by the actor of a position, or relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests under circumstances that *would otherwise not create liability*." (emphasis added). Plaintiff's brief at 12. There is, however, already an established claim and remedy for the conduct complained of such that this legal concept is not applicable in the instant case.

Accordingly, defendant's motion for summary judgment is granted with respect to this issue.

IT IS THEREFORE ORDERED THAT:

1. Defendant's motion for summary judgment is denied with respect to plaintiff's First, Second, Third, and Fourth Claims for Relief.

2. Defendant's motion for summary judgment is granted with respect to plaintiff's Fifth Claim for Relief.