Sam DUNLAP, Ed Bachmann, Margge Adler, Janalyn Kehm, and Lawrence D. Ochs, individually, Plaintiffs–Appellants,

v.

COLORADO SPRINGS CABLEVISION, INC., a Colorado corporation; Leonard Tow, John Doe, and Richard Doe, individually, Defendants–Appellees.

No. 88CA1317.

Colorado Court of Appeals, Div. III.

Nov. 5, 1992.

Rehearing Denied Jan. 7, 1993.

Certiorari Denied July 12, 1993.

J. Gregory Walta, James Robert Barash, Colorado Springs, for plaintiffs-appellants.

Holland & Hart, Gregory R. Piche, Andrew I. Gavil, Todd W. Miller, Denver, for defendants-appellees.

Opinion by Judge PLANK.

The plaintiffs brought this suit seeking damages under Colorado's Unfair Trade Practices Act (Act), § 6–2–101, et seq., C.R.S. (1992 Repl.Vol. 2). The plaintiffs are all consumers who purchased cable services from defendant Colorado Springs Cablevision, Inc. (Cablevision), the exclusive provider of cable services in the geographic area where the plaintiffs reside. Cablevision has only one office in the Colorado Springs area. Plaintiffs allege that Cablevision violated the Act by charging significantly higher prices to them than it charged to purchasers buying from Cablevision in a geographic area of Colorado Springs where Cablevision was in direct

competition with another television cable company.

The district court dismissed the suit on two bases. First, it ruled the plaintiffs lacked standing. Also, it held that a violation of the Act required the defendant to operate from two or more distinct business locations, a condition which was not met since Cablevision has only one office in the Colorado Springs area. On appeal this court held that the plaintiffs lacked standing, and affirmed the trial court. *Dunlap v. Colorado Springs Cablevision, Inc.*, 799 P.2d 416 (Colo.App.1990). The supreme court reversed, holding that the plaintiffs do have standing to bring this claim and remanded the cause to this court. *Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286 (Colo.1992).

■ We now consider the issue of whether, as a matter of law, Cablevision is insulated from claims asserted under the Act because it has only one office. We conclude that they are not so insulated; thus, we reverse the dismissal and remand for further proceedings.

Section 6–2–103, C.R.S. (1992 Repl.Vol. 2) prohibits certain anticompetitive discriminatory pricing structures, and states:

(1) It is unlawful for any person, firm, or corporation doing business in the state of Colorado and engaged in the ... sale of any commodity, product, or service, or output of a service trade of general use or consumption, ... with the intent to destroy the competition of any regular established dealer in such commodity, product or service, ... to discriminate between different sections, communities, or cities, or portions thereof, or between different locations in such sections, communities, cities, or portions thereof in this state by selling or furnishing a commodity, product, or service at a lower rate in one section, community, or city, or any portion thereof, or in one location in such section, community, or city or any portion thereof than in another after making allowance for the difference, if any, in the grade or quality, quantity, and actual cost of transportation....

Few cases in Colorado have been brought under this statute, and none address the situation in which a defendant is operating from only one business location while serving several geographic areas in the same city.

■ The appropriate construction of a statute is a question of law. *People v. Terry*, 791 P.2d 374 (Colo.1990).

■ A court must construe a statute to determine the intent of the General Assembly. *Kern v. Gebhardt*, 746 P.2d 1340 (Colo.1987).

■ If the statute is unambiguous, it is improper to go beyond the accepted meaning of the words in the Act. *City & County of Denver v. Howard*, 622 P.2d 568 (Colo.1981). As well, if the language of the statute is plain, its meaning clear and no absurdity results, the court should never strain an interpretation beyond the common meaning. *Willer v. City of Thornton*, 817 P.2d 514 (Colo.1991).

The Act, in § 6–2–102, C.R.S. (1992 Repl. Vol. 2), states that "the purpose of this article is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory trade practices by which fair and honest competition is destroyed or prevented. This article shall be liberally construed so that its beneficial purposes may be subserved." Section 6–2–103(3), C.R.S. (1992 Repl.Vol. 2) also provides that: "The inhibition in this section against locality discrimination shall embrace ... any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this article." This languages signals a clear intent by the General Assembly that the Act has broad applicability.

Cablevision cites two cases in support of its assertion that the act should apply only to companies operating from two or more "outlets" or locations: *Harris v. Capital Records Distribution Corp.*, 64 Cal.2d 454, 50 Cal.Rptr. 539, 413 P.2d 139 (1966) and *Arapahoe Airport Joint Venture # 1, Ltd. v. Rocky Mountain Beechcraft*, Civil Ac-

tion No. 86–F–1068 (D.Colo.1987). However, neither of these opinions reach the factual setting presented in this case.

In *Harris v. Capital Records Distribution Corp.*, a phonographic record retailer brought suit against Capital Records because Capital was selling records to another retailer at a discount price, and the second retailer, whose business was located across the street from the plaintiff, was then able to undercut the plaintiff. The court held that California's Unfair Trade Practices Act did not apply to Capital, who was only discriminating among individual purchasers, rather than discriminating based on locality.

In *Arapahoe Airport Joint Venture # 1, Ltd. v. Rocky Mountain Beechcraft*, *supra*, the federal district court held that the Colorado Unfair Trade Practices Act did not apply to the defendant Beechcraft for selling fuel to different purchasers at the Arapahoe airport for different prices because there was only discrimination among individual purchasers, and not discrimination based on locality.

Cablevision's consumers, however, have not claimed that Cablevision discriminated against them as individual purchasers. Rather, they claim that Cablevision discriminated between consumers in one distinct geographic area of Colorado Springs from another geographic area.

Cablevision argues that the statute should be read to apply only to defendants operating from two distinct outlets or operation centers. In support of its position, Cablevision has placed great weight on a 1949 article explaining the Act: Creamer, *The Unfair Practices Act of Colorado and Its Recent Amendment*, 26 Dicta 162 (1949).

In that article, it is stated:

Persons covered are prohibited from discriminating between different sections, communities or cities or portions thereof, or different locations therein, by selling or furnishing commodities, products, or services at a lower rate in one such section, community or city or portion thereof, or in one geographic location therein, than another. Under such acts, meaning of the geographic divisions is quite clear, and the word 'location' is used as synonymous with 'outlet' in business parlance, the intention being to prevent baseless price differentials in different outlets, in the same area, belonging to the same purveyor of commodities, products, or services.

26 Dicta at 64

■ Cablevision's interpretation of the Act, and of the above explanation of the Act, is too narrow. The Act is unambiguous; it is intended to apply whenever a business charges different prices to purchasers based on geographic differences with an intent to drive out competition in one geographic area. There is no stated requirement in the Act that a business have two or more mailing addresses before the Act will apply. A business needs only to discriminate in price based on geographic territories. Any other interpretation would strain the plain meaning and intent of the statute.

In *Harris v. Columbia Records Distributing Corp.*, *supra*, the court held that the original purpose of the California Unfair Trade Practices Act, similar in from to the Colorado Act,

was to prevent a monopolistic practice by which a large retail chain would lower its price at a store in one area, constituting a severable market, until the competition form smaller, local businesses in that community had been eliminated, concurrently offsetting the losses it thus suffered by charging higher prices in its other areas of operation. After the demise of competitors, the chain outlet would then realize monopoly profits, and the procedure of attrition would be repeated elsewhere. 50 Cal.Rptr. at 542, 413 P.2d at 142.

Here, Cablevision has admitted charging two different sets of rates in two geographically based areas in Colorado Springs. Plaintiffs allege that Cablevision, in effect, "cut up" the Colorado Springs area into two distinct business territories. In one area it was competing with another cable company and sought to undercut its

competition. In another area, where plaintiffs received cable service from Cablevision, it had no competition. Plaintiffs contend that because they lived in a geographic area where Cablevision had no competition, Cablevision charged monopolistic prices to negate any loss it might sustain while attempting to drive out its competition in the other area. If proven, this is exactly the kind of price discrimination the Act seeks to prohibit, and Cablevision is not insulated.

Accordingly, the judgment is reversed, and the cause is remanded to the trial court for further proceedings.

STERNBERG, C.J., and MARQUEZ, J., concur.