VENTA, INC. and Energy Distributing
Company, Inc., Plaintiffs,

v.

FRONTIER OIL AND REFINING
COMPANY, Defendant.

Civ. A. No. 93–F–427.

United States District Court,
D. Colorado.

April 26, 1993.

Richard I. Brown, Haligman and Lottner, Englewood, CO, Gregg R. Potvin, Taylor, Thiemann & Aitken, Washington, DC, for plaintiffs.

Garry R. Appel, Doherty, Rumble & Butler, P.C., Denver, CO, for defendant.

## ORDER REGARDING MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving allegations of antitrust violations and price discrimination. This matter comes before the Court on Defendant's motion to dismiss. Jurisdiction is based on 28 U.S.C.A. § 1331 (West Supp. 1992). The litigants have fully briefed the matter. For the reasons stated below, the motion is DENIED IN PART and GRANTED IN PART.

### I. Background

Plaintiffs in this case are Venta, Inc. and Energy Distributing Company, Inc. ("ENDCO").[1] Venta is a Colorado corporation engaged in the business of purchasing and distributing motor fuel and associated products. ENDCO, also a Colorado corporation, is a purchaser and distributor of products associated with motor fuel and a wholly-owned subsidiary of Venta. Defendant Frontier Oil and Refining Company ("Frontier"), is a Delaware corporation which markets motor fuel, particularly automotive and diesel fuel, for resale. Frontier supplies motor fuel to com-

petitors and resale customers of Plaintiffs in Colorado, Wyoming, and Nebraska. Frontier also competes with Plaintiffs in seeking sales of motor fuel to both end-user and reseller accounts.

Plaintiffs allege Frontier knowingly and intentionally engaged in price discrimination between Plaintiffs and Plaintiffs' competitors, other customers of Frontier. Plaintiffs allege Frontier charged Plaintiffs a higher price than it charged Frontier's other customers for products of similar grade and quality. Plaintiffs also allege Frontier conspired to restrain trade in violation of federal and state antitrust law and breached covenants of good faith and fair dealing.

On February 23, 1993, Plaintiffs filed a complaint asserting five claims for relief against Frontier including: (1) price discrimination in violation of the Robinson–Patman Act; (2) concerted refusal to deal in violation of the Sherman Act; (3) price discrimination in violation of the Colorado Unfair Practices Act; (4) concerted refusal to deal in violation of the Colorado Anti–Trust Act; and (5) breach of covenant of good faith and fair dealing in violation of applicable state law.

Frontier filed its motion to dismiss the complaint for failure to state a claim upon which relief may be granted or, in the alternative, for a more definite statement. Frontier asserts Plaintiffs' third and fifth claims are not supported by their allegations and the first, second, and fourth claims are too vague to advise Frontier of what they are alleging.

### II. Standard for Motion to Dismiss

Under Fed.R.Civ.P. 8(a)(2), a plaintiff is required to offer a short and plain statement of the claims against defendants. "This requirement guarantees that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1062, 1069–70 (D.Colo.1991) *aff'd*, 964 F.2d 1022 (10th Cir.1992) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

1. All factual recitations in this order have been alleged in the litigants' pleadings.

■ A claim should not be dismissed under Fed.R.Civ.P. 12(b) unless a plaintiff can prove no set of facts in support of her claims which would entitle her to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Tri–Crown, Inc. v. American Fed. Sav. & Loan Ass'n,* 908 F.2d 578, 582 (10th Cir.1990). The court must accept all factual allegations as true and must draw all reasonable inferences in favor of the nonmoving party. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. All of the plaintiff's pleadings must be liberally construed. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). As long as a plaintiff offers evidence in support of a legally recognized claim for relief, motions to dismiss must be denied. *Hiatt v. Schreiber,* 599 F.Supp. 1142, 1145 (D.Colo.1984).

### III. Price Discrimination Under the Colorado Unfair Practices Act

■ Frontier asserts that Plaintiffs' state price discrimination claim fails to comply with the provisions of Colorado's Unfair Practices Act ("the Act"), which prohibits only "geographically discriminatory" pricing. The statute states, in part:

> It is unlawful for any person ... with the intent to destroy the competition of any regular established dealer ... to discriminate between different sections, communities or cities or portions thereof ... by selling ... a product ... at a lower rate in one section, community, or city, or any portion thereof ... than in another ...

C.R.S. § 6–2–103(1) (West 1992 Repl. Vol.).[2]

The relevant portion of Plaintiffs' complaint states that:

> Defendant, while engaged in and in the course of Commerce, willfully and intentionally engaged in price discrimination between Plaintiffs and other customers of the Defendant, who were actively engaged in competition with Plaintiffs and their customers, *by charging the Plaintiffs a higher price than Defendant's other customers for Products of like grade and quality.*

Plaint. Complaint, at 4, ¶ 15 (emphasis added).

Frontier argues that Plaintiffs' complaint states only that Frontier sold fuel products to Plaintiffs at a higher price than Frontier sold to others, and fails to allege Frontier "sold the same product, at the same time, at a lower price in one area of Colorado than another." Def.Mot. to Dismiss, at 5. Frontier cites a Colorado Supreme court case for the proposition that the Colorado Unfair Practices Act applies only to area geographic price discrimination, not to price discrimination generally. *See Dunlap v. Colorado Springs Cablevision,* 829 P.2d 1286 (Colo. 1992) (observing that the Act contains a "sales below cost provision ... and the provision prohibiting *area* price discrimination") (emphasis added). However, the Court in *Dunlap* does nothing more than refer to a below-cost provision and an area provision. 829 P.2d at 1291 n. 8. Although we believe the Act does contain a geographic requirement, *Dunlap* does not articulate it.

Plaintiffs attempt to argue by analogy to the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13, 13(a) (1973) ("Robinson–Patman"), after which part of the Act is modelled, that Colorado's statute covers discrimination between purchasers. Although there are similarities between the Act and one portion of Robinson–Patman, the section of Robinson–Patman relied on by Plaintiffs states that it shall be

> unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, *to discriminate in price between different purchasers of commodities of like grade and quality where ... the effect of such discrimination may be substantially to lessen competition* or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of

honest competition is destroyed or prevented. This article shall be liberally construed so that its beneficial purposes may be subserved. C.R.S. § 6–2–102.

**2.** The Act declares the legislature's intention to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and

such discrimination, or with the customers of either of them [subject to certain exceptions and justifications] . . .

15 U.S.C. § 13(a) (emphasis added).[3]

The Act is clearly worded very differently; the Colorado legislature appears to have made a conscious choice not to use the language of Robinson–Patman. Robinson–Patman contains both a section prohibiting price discrimination "between different purchasers," 15 U.S.C. § 13(a), quoted above, and a section prohibiting discrimination between different "parts of the United States." 15 U.S.C. § 13a. We concur with the reasoning of the Supreme Court of California, in construing a state statute almost identical to Colorado's, that the legislature could have chosen to model its Act after section 13(a) of Robinson–Patman with very few additional words. *See Harris v. Capitol Records Distributing Corp.,* 64 Cal.2d 454, 457, 50 Cal. Rptr. 539, 542 413 P.2d 139, 142–3 (1966); *Dunlap v. Colorado Springs Cablevision, Inc.,* 855 P.2d 6, 7, 8 (Colo.App.1992) (not yet released for permanent publication). Instead, Colorado's statute refers to what has been termed "locality discrimination," *see id.,* as between "different sections, communities, or cities, or portions thereof. ." *See also Arapahoe Joint Venture # 1, Ltd. v. Rocky Mountain Beechcraft,* Civil Action No. 86–F–1068 (D.Colo.1987) (holding Act does not apply to discrimination between different individual purchasers where such discrimination is not based on locality).[4]

Price discrimination under the Act must be based upon and directed at geographic differences, not merely the necessary coincidence that favored and disfavored purchasers are physically separate. Plaintiffs' claim has not alleged discrimination between different localities. Their allegation of individual purchaser discrimination is not saved by the fact that certain favored purchasers may reside in locations obviously different from Plaintiffs. The claim will be dismissed.

### III. Robinson–Patman Price Discrimination Claim

Frontier claims there are two primary areas of inadequacy in the complaint with regard to the federal price discrimination claim: it lacks any allegations as to the relevant time of the alleged violations, and it contains no facts supporting antitrust injury, specifically, facts stating that Plaintiffs were unable to purchase the same product from others at a lower price.

▮ Plaintiffs respond that their reference to the year 1989 in the complaint makes the time frame clear. The time period could have been set forth with greater specificity and emphasis, but particularly now that Plaintiffs have committed themselves to a time frame to guide discovery, we find no cause to dismiss on this ground. Plaintiffs should clarify the relevant period in their amended complaint. Frontier's second contention is that Plaintiffs have not alleged an inability to get the same price as the allegedly favored purchasers. Without addressing whether there is such a requirement, we find that Plaintiffs have sufficiently alleged as much in paragraph 30(d): "Such refusal to deal subjected Plaintiffs and their re-seller customers to *prohibitive* additional costs for transportation from more distant alternative sources of supply." (emphasis added).

### IV. Refusal to Deal

▮ Frontier next attacks the sufficiency of Plaintiffs' refusal to deal claims. Frontier claims as inadequate Plaintiffs' identifica-

---

**3.** Price favoritism of the sort alleged by Plaintiffs is unlawful under Robinson–Patman. *See, e.g., Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 844 (D.Minn.1989).

**4.** Some jurisdictions have conducted a historical analysis of similar legislation to conclude that the intent behind such legislation is to

 prevent a monopolistic practice by which a large retail chain would lower its prices at a store in one area, constituting a severable market, until the competition from smaller, local businesses in that community had been eliminated, concurrently offsetting the losses . . . thus suffered by charging higher prices in its other areas of operation. After the demise of competitors, the chain outlet would then realize monopoly profits, and the procedure of attrition would be repeated elsewhere.

*Harris,* 50 Cal.Rptr. at 542, 413 P.2d at 142; *see also State v. Drayton,* 82 Neb. 254, 117 N.W. 768 (1908); *State v. Central Lumber Co.,* 24 S.D. 136, 123 N.W. 504 (1909), *aff'd,* 226 U.S. 157, 33 S.Ct. 66, 57 L.Ed. 164 (1912).

tion of Frontier's co-conspirators as "numerous retailers and wholesalers engaged in competition with Plaintiffs." Plaint. Compl., at 6, ¶ 26. We will not dismiss this count at such an early date. Pleading on information and belief is to be liberally allowed in antitrust cases where proof of a conspiracy is often in the hands of the alleged conspirators. *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1773 (10th Cir. 1979). Antitrust complaints require no higher standard of specificity than notice pleading, *Quality Foods v. Latin Am. Agribusiness Devel.*, 711 F.2d 989, 995 (11th Cir. 1983), which means the complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103. "An antitrust complaint must comprehend a so-called prima facie case, and enough data must be pleaded so that each element of the alleged antitrust violation can be properly identified." *Quality Foods*, 711 F.2d at 995 (internal citations omitted). The alleged facts need not be spelled out "with exactitude" and relief need not appear imminent. *Id.*[5]

■ We do not dismiss because there remains the possibility the Plaintiffs can prove a set of facts in support of their claim that would entitle them to relief. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. On the other hand, if an opposing party cannot formulate a response because the factual allegations are so sparse, it is entitled to a more definite statement. Fed.R.Civ.P. 12(e); *Perington*, 631 F.2d at 1371. Plaintiffs should allege with greater particularity the period of the alleged conspiracy and, more generally, the actions taken by the alleged conspirators to effectuate it.

## V. Breach of Covenant of Good Faith and Fair Dealing

■ Frontier asserts that Colorado contract law does not recognize a contractual duty of good faith because "[n]o Colorado case has expressly adopted Section 205 of the Restatement" in non-U.C.C. contracts. Def. Mot. to Dismiss, at 11. Although several courts in this district have held there to be an implied duty of good faith in non-U.C.C. contexts, *see Rosales v. AT & T Information Systems, Inc.*, 702 F.Supp. 1489, 1502 (D.Colo.1988) (Carrigan, J.); *Price v. Federal Express Corporation*, 660 F.Supp. 1388, 1391 (D.Colo.1987) (Kane, J.); *Hiatt*, 599 F.Supp. at 1145 (Kane, J.),[6] Frontier argues that *Price* relied on an incorrect reading of *Ruff v. Yuma County Transportation Co.*, 690 P.2d 1296, 1298 (Colo.App.1984) and *Rosales* merely relied on *Price*.

We have examined the opinion of the Colorado Court of Appeals in *Ruff* and we agree with Judges Kane and Carrigan that *Ruff*'s incorporation into its reasoning of Section 205 implicitly adopts the good faith duty of Section 205. Frontier's contention that Colorado's adoption of Section 205 must be explicitly laid out in so many words is unavailing. The *Ruff* Court sets out Section 205 as providing "that every contract imposes on each party a duty of good faith and fair dealing in its performance." 690 P.2d at 1298. The Court elaborates on the Restatement's Comment a in order to explain the workings of the good faith doctrine. The Court then quotes the best efforts provision of the parties' purchase agreement just before it concludes the defendant in that case did not comply, in good faith, presumably, with the best efforts provision. The *Ruff* Court clearly relied on Section 205's duty of good faith. We are not alone in our interpretation of *Ruff*. *See Colorado Interstate Gas Co. v. Natural Gas Pipeline Co.*, 661 F.Supp. 1448, 1474 (D.Wyo.1987) (citing *Ruff* in noting Colorado's recognition of duty of good faith in contracts); *St. Benedict's Development Co. v. St. Benedict's Hospital*, 811 P.2d 194, 200

---

**5.** We do not reach Plaintiffs' conclusory and casually cited argument that their complaint alleges a *per se* horizontal restraint of trade violation that requires less detailed pleading. Plaintiffs have not adequately explained either the doctrine or their assertion that it applies to them.

We take this opportunity to note that both parties would do well to clarify their citations of authority in support of arguments, including greater use of parantheticals, and cite to specific pages of cases that support their arguments, rather than to entire cases.

**6.** *See also Covert v. The Allen Group, Inc.*, 597 F.Supp. 1268, 1269 (D.Colo.1984) (Kane, J.) (following *Price*).

(Utah 1991) (same). Any other interpretation would render *Ruff*'s citation to and explanation of Section 205 entirely superfluous.[7]

 Frontier contends that if the Court finds Colorado to have a cause of action for breach of a covenant of good faith, the Court should dismiss Plaintiffs' claim for its failure to specify how an implied covenant of good faith arose. We are not persuaded Plaintiffs must so plead at this point in a nonemployment context. *Cf. Rosales,* 702 F.Supp. at 1503 (requiring statement in amended complaint regarding which document, conversation, communication, or action of employer gave rise to implied covenant of good faith and fair dealing in employment).

## VI.

Accordingly, it is ordered that:

(1) Defendant's Motion to Dismiss or, Alternatively, For More Definite Statement, filed March 22, 1993, is DENIED IN PART and GRANTED IN PART.

(2) The motion to dismiss Plaintiffs' claim under the Colorado Unfair Trade Practices Act is GRANTED. The claim is dismissed.

(3) The motion for a more definite statement with regard to Plaintiffs' refusal to deal claim and Robinson–Patman claim is GRANTED.

(4) All other motions are DENIED.

.

---

**7.** Frontier also argues that because the dissent in *Scrima v. Goodley,* 731 P.2d 766, 769 (Colo.App. 1986) argued, among other things, that the trial court should have construed the contract to require good faith, the majority therefore clearly rejected the principle of good faith in Colorado contracts. This argument is meritless. A majority opinion cannot be assumed to affirmatively hold the opposite of every argument or conclusion advanced by the dissent. Frontier's reliance on *Pittman v. Larson Distributing Company,* 724 P.2d 1379, 1385 (Colo.App.1986) is equally improper. The Court refused to extend a duty of good faith to certain types of employment contracts in certain factual situations. There is no implication for other types of contracts or factual situations in the Court's cursory holding.